515 A.2d 543

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**John Robert KOONCE, Appellee.**

Supreme Court of Pennsylvania.

Argued June 4, 1986.

Decided Sept. 25, 1986.

454

J. Michael Eakin, Dist. Atty., Merle L. Ebert, 1st Asst. Dist. Atty., for appellant.

Carol F. Munson, Public Defender, Frederick I. Huganir, Carlisle, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

This appeal by the Commonwealth is from an order of the Superior Court affirming an order of the Cumberland County Common Pleas Court arresting judgment and dismissing all charges against the appellee, John Robert Koonce. The lower court arrested judgment and dismissed the charges after holding that the appellee was tried in violation of Rule 1100 of the Pa.R.Crim.Pro. which requires that criminal defendants be brought to trial within 180 days of the filing of a criminal complaint. The lower court concluded that Rule 1100 was violated even though prior to trial the

Commonwealth, pursuant to the Rule, petitioned for and obtained an extension of time permitting the appellee's trial to begin beyond the 180–day time requirement. The lower court ruled and the Superior Court affirmed on the lower court's opinion, that the Commonwealth failed to act with due diligence in attempting to bring the appellee to trial, and therefore, the extension of time granted to the Commonwealth was invalid. We disagree with the conclusion that the Commonwealth failed to demonstrate due diligence and that the extension of time granted by the court was improper. We, therefore reverse.

David Lee Gill (Gill) and Timothy Henry Epps (Epps) were sailors in the United States Navy stationed in Philadelphia, Pa. On the evening of February 12, 1982, Gill and Epps were on leave, traveling by auto from Philadelphia to Charleston, West Virginia. The automobile they were riding in was owned by Epps. At or about 10 o'clock p.m. they stopped for the night at a Best Western motel in Carlisle, Pa. After checking in, they went to their room, unpacked some of their belongings, watched television for a short time and then went to a lounge located in a lower level of the motel. In the lounge they sat at the bar and had some drinks, keeping pretty much to themselves. It was between midnight and 1:00 a.m. when they returned to their room.

Shortly after they arrived back in their room, the appellee and another man knocked on the door. Both were strangers, but they were admitted to the room, supposedly to discuss the alleged harrassment of a certain woman that occurred earlier in the lounge. After talking a while the appellee said he had made a mistake as to the identity of Gill and Epps and he and the other man began to leave. Moments after they went out the door, and before the door was completely closed, the appellee and his accomplice burst violently back into the room. The appellee was wielding a wooden club and his accomplice was brandishing a handgun. The appellee, without provocation, began to viciously beat Epps with the club while his accomplice pistol whipped Gill after ordering Gill to lie on his stomach on the floor of the

bathroom. The senseless beatings opened wounds on the victims spilling their blood about the room especially in the area where Gill was pistol whipped. The battered victims were made to wipe up the bloody mess, using the motel towels. After they cleaned up the blood as ordered, the victims were then made to put on their outer coats and leave the room. With the appellee leading the way and his cohort at the rear with pistol in hand, Gill and Epps were forced to walk into the cold winter night. The forced march took them ⅛ to ¼ of a mile away from the motel into a secluded wooded area. When they reached a small stream, they were savagely attacked again. Epps was repeatedly beaten with the wooden club and Gill with the pistol. While the appellee was pummelling Epps with the club, appellee apparently noticed that Epps had a folding knife attached to his belt. Appellee took the knife and used it to stab Epps, opening wounds in his chest, back and face near his right eye. Appellee then gave the knife over to his accomplice who used it on Gill. Gill was stabbed in the chest and in the throat, directly below his adam's apple. Unconscious and bleeding from the beatings and the knife wounds, Gill and Epps were left for dead lying in the woods. The appellee and his accomplice returned to the motel, took some of the victims' belongings from their room, stole Epps' automobile and left the state. Miraculously, Gill and Epps managed to get help and survived.

On February 13, 1982, the appellee was charged in Cumberland County, Pennsylvania, with two counts of criminal attempt of criminal homicide, two counts of robbery, two counts of aggravated assault, two counts of felonious restraint and one count of theft by unlawful taking. On February 16, 1982 the appellee was arrested in Danville, Virginia on charges originating there. Pennsylvania authorities were notified immediately of appellee's arrest in Danville.

On February 17, 1982, Pennsylvania state troopers travelled to Danville and formally lodged a detainer against the appellee. Subsequently, there were various communications between the Cumberland County district attorney

(district attorney) and the Virginia authorities. On May 27, 1982, the district attorney sought temporary custody of the appellee through the Interstate Agreement on Detainers Act.[1] (Detainers Act) The Virginia authorities responded that since the appellee had not as yet been sentenced in Virginia, he was not amenable to the procedures of the Detainers Act.[2]

On August 8, 1982, the Commonwealth brought a petition in the Cumberland County Common Pleas Court seeking an extension of time within which to bring the appellee to trial. The petition alleged that in spite of diligent efforts, the Commonwealth was unable to obtain custody of the appellee so that he could be tried within the required 180 days. At the hearing on the Commonwealth's petition, the appellee was represented by counsel who offered no opposition to the averments or prayer for relief. The Commonwealth's petition was granted and the time within which to bring the appellee to trial was extended until the appellee returned to the Commonwealth.

In December, 1982, the Commonwealth learned that the appellee refused to waive extradition. The district attorney continued to keep in contact with the Virginia authorities in efforts to secure the return of the appellee. In May, 1983 the district attorney sought appellee's return under the Uniform Criminal Extradition Act.[3] On the day of the scheduled hearing (July 13, 1983), the appellee elected to waive extradition.[4] He was returned to Pennsylvania on July 14, 1983. Trial was scheduled for September 19, 1983 but was continued until the November term because of appellee's request for a preliminary hearing. On December 12, 1983 the appellee was tried non-jury before the Honorable Harold E. Sheely. The appellee was found guilty of two counts of criminal attempt to commit criminal homicide, two

1. 42 Pa.C.S.A. §§ 9101–9108.
2. By its terms, the Detainers Act applies to persons who are "serving a term of imprisonment in any party state ..." 42 Pa.C.S.A. § 9101.
3. 42 Pa.C.S.A. § 9121, et seq.
4. Prior to the day of the scheduled extradition hearing, the appellee had steadfastly refused to waive extradition.

counts of aggravated assault, one count of unlawful restraint, and one count of theft by unlawful taking. Acting on post-trial motions brought by appellee, the trial court held that appellee was tried in violation of Rule 1100 of the Pa.R.Crim.Pro., arrested judgment and discharged the appellee. The Superior Court affirmed.

Rule 1100 of the Pa.R.Crim.Pro. mandates that those accused of a crime or crimes be given a prompt trial. The pertinent provision of the Rule provides:

> Trial in a court case in which a written complaint is filed against the defendant after June 30, 1974 shall commence no later than one hundred eighty (180) days from the date on which the complaint is filed.

Under certain circumstances the time to bring an accused to trial may be extended by the court beyond the 180–day time period prescribed by the rule.

> (c)(1) At any time prior to the expiration of the period for commencement of trial, the attorney for the Commonwealth may apply to the court for an order extending the time for commencement of trial.
>
> (2) A copy of such motion shall be served upon the defendant through his attorney, if any, and the defendant shall also have the right to be heard thereon.
>
> (3) Such motion shall set forth facts in support thereof, and shall be granted only upon findings based upon a record showing that trial cannot be commenced within the prescribed period despite due diligence by the Commonwealth and, if the delay is due to the court's inability to try the defendant within the prescribed period, upon findings based upon a record showing the causes of the delay and the reasons why the delay cannot be avoided.
>
> (4) Any order granting a motion for extension shall specify the date or period within which trial shall be commenced. Trial shall be scheduled for the earliest date or period consistent with the extension request and the court's business, and the record shall so indicate.

The complaint against the appellee was filed on February 13, 1982. The appellee's trial on the charges lodged

in the complaint did not commence until December 12, 1983. There is no question that the trial began well beyond the 180 days prescribed by Rule 1100. Also, there is no question that on August 3, 1982 the lower court entered an order extending the time to bring the appellee to trial. The time was extended to "the next scheduled term of court, following [appellee's] return to the Commonwealth."

The first issue raised is whether the order of the lower court extending the time to bring the appellee to trial was properly and validly granted. To obtain a valid extension, Rule 1100 requires the prosecution to show that the trial cannot start within 180 days despite due diligence by the Commonwealth. *Commonwealth v. Ehredt*, 485 Pa. 191, 401 A.2d 358 (1979).

A criminal complaint was filed against the appellee on February 13, 1982. Three days later it was learned that the appellee was in custody in Virginia on separate criminal charges. One day after that, on February 17, 1982, Pennsylvania state police officers went to Danville, Virginia and lodged a detainer against the appellee.[5] Subsequently, various informal exchanges were made between the district attorney's office and the Virginia authorities. In a letter dated April 1, 1982, the Virginia authorities notified the district attorney's office that the appellee was awaiting trial in Danville. Further, the notice indicated that the appellee would probably be tried in Danville sometime during the month of May and the Virginia charges would be disposed of by the end of that month. On May 27, 1982, the district attorney filed the papers required under the Detainers Act seeking temporary custody of appellee for the purpose of trying him on the charges pending in Pennsylvania. In a letter dated June 21, 1982, the Virginia authorities notified the district attorney's office that appellee's sentencing in Virginia was continued pending the outcome of an appeal appellee had filed. Because he had not been sentenced, appellee was not a prisoner who had begun a term of

---

5. At the time the state troopers were in Danville to file a detainer against the appellee, they obtained a full confession from the appellee.

imprisonment and therefore, he was not, at that time, subject to the Detainers Act. The Virginia authorities further advised that at such time that the appellee entered into the Virginia penal system as a sentenced prisoner, the district attorney would be notified so that proceedings under the Detainers Act may be initiated. In July, 1982 the district attorney's office was notified that before appellee could be returned to Pennsylvania he was entitled to a hearing in Virginia. It was indicated that this process alone would take thirty additional days. It was at this point that the Commonwealth sought and obtained an extension of time to bring the appellee to trial. The record demonstrates that the Commonwealth's efforts to bring the appellee to trial were reasonable and were pursued with diligence. On these facts we find that the extension of time was properly granted. *Cf. Commonwealth v. Roman*, 494 Pa. 440, 431 A.2d 936 (1981). In *Roman* we considered whether the time during which the accused was incarcerated in a New Jersey jail should be excluded from the period of time between the filing of the complaint and the commencement of trial. There we said:

A review of the record evinces a finding of due diligence by the Commonwealth in attempting to acquire custody of appellant for prosecution in Pennsylvania. The District Attorney in Mercer county, Joseph J. Nelson, contacted the Deputy Secretary of the Commonwealth of Pennsylvania to initiate extradition proceedings on December 7, 1973. After several communications among the Deputy Secretary, Nelson, the Pennsylvania Bureau of Corrections, and appropriate New Jersey authorities, Nelson requested delivery of appellant to Pennsylvania authority pursuant to the Interstate Agreement on Detainers Act. After denial of said request, Nelson contacted Governor William P. Cahill of New Jersey on behalf of Pennsylvania Governor Milton Shapp, again requesting delivery of appellant to Pennsylvania officials. A negative response from the Governor of New Jersey was received on February 19, 1974, reiterating their position that custody of appellant would not be transferred until

the disposition of the charges against him. These prompt attempts by the Commonwealth to secure custody of appellant are more than enough evidence to establish due diligence by the Commonwealth. The time period in which the Commonwealth attempted to extradite appellant, December 7, 1973, until July 18, 1974, when the New Jersey authorities surrendered the appellant, was 223 days. When excluded from the 351 day period that ran between the filing of the complaint and the commencement of trial, it is obvious that appellant was tried well within the mandate of Pa.R.Crim.P. 1100(a)(1). Consequently, there was no meritorious Rule 1100 issue to be raised by trial counsel.

*Id.*, 494 at 445–446, 431 A.2d at 938–39. In *Roman* much of the Commonwealth's efforts were informal exchanges under the Detainers Act. We, nevertheless had no difficulty in finding "more than enough evidence to establish due diligence." *Id.*

■ In the present case, the lower court held that in attempting to secure appellee's return to Pennsylvania under the Detainers Act, the district attorney erroneously proceeded under the wrong statute. The lower court said that the prosecution could only demonstrate due diligence by showing that every step reasonable was taken in attempting to bring the appellee to trial and that every reasonable step would include prompt proceedings under the Extradition Act.[6] We disagree. "The 'due diligence' required of [the Commonwealth] does not demand perfect vigilance and punctilious care, but rather a reasonable effort." *Commonwealth v. Polsky*, 493 Pa. 402, 426 A.2d 610 (1981). *See also Commonwealth v. Johnson*, 305 Pa.Super 310, 451 A.2d 546 (1982). Considering all of the facts and circumstances in this case the Commonwealth made a reasonable effort.

This is not a case where the prosecution sat by and did nothing to bring the appellee to trial while the 180 days ran.

**6.** Unlike the Detainers Act, proceedings under the Extradition Act do not depend upon the sentenced prisoner status of the person sought to be returned.

Here, the Commonwealth immediately initiated proceedings under the Detainers Act to secure appellee's presence in Pennsylvania. The Commonwealth continued those efforts all during the 180 day period. When it became apparent that the appellee would not be returned in time to commence trial within the required time, an extension was applied for and granted without opposition from the appellee. After the extension of time was granted, the Commonwealth's efforts, by way of communications and informal exchanges, continued right up to the time that formal extradition proceedings were commenced. To be sure, the Commonwealth, at the outset, could have initiated extradition proceedings instead of proceeding under the Detainers Act. It is extremely doubtful however, that the immediate initiation of procedures under the extradition statute would have resulted in the appellee returning to Pennsylvania at a much earlier date. The Virginia authorities indicated that the appellee would be available for return *after* the disposition of the charges in Virginia. Further, the appellee refused to waive extradition right up until the day of the hearing. The district attorney's election to seek appellee's return under the Detainers Act, although premature at the time made, was not obviously unreasonable. We hold that the Commonwealth's actions in this case were reasonable and demonstrate due diligence. The extension of time granted by the trial court under these circumstances was proper.[7]

■ Next it is argued that the Commonwealth failed to exercise diligent efforts to bring the appellee to trial after his return to Pennsylvania. The appellee was returned to

7. When the Commonwealth wants the return of a person who is facing charges and awaiting trial in another state there are two basic avenues of action that can be pursued. First, the Commonwealth may initiate extradition proceedings and hope the authorities in the asylum state will agree to return the wanted person. Except where only very minor offenses are involved, a state, ordinarily, will not surrender a prisoner until all criminal proceedings in that state are concluded. Second, the Commonwealth may wait until the criminal charges are disposed of in the other state. If those charges result in a conviction

Pennsylvania on July 14, 1983 after waiving extradition. The appellee's trial began on December 12, 1983. The appellee argues that because of this delay of 151 days the charges should be dismissed and he should be discharged. We find that this argument lacks merit.

After the appellee was returned to Pennsylvania on July 14, 1983 he was promptly arraigned and scheduled to appear for trial on September 19, 1983. At this point, the appellee moved to have his case returned to the magistrate for a preliminary hearing. The motion was granted over the Commonwealth's objections. Following the preliminary hearing, the appellee was re-arraigned and his trial was scheduled for the November term. Following pre-trial motions filed by appellee, he was tried on December 12, 1983.[8] The delay that resulted after the appellee returned to Pennsylvania was brought on by the motions pursued by appellee. The Commonwealth acted reasonably and did nothing to cause the start of trial to be delayed.

The order of the Superior Court is reversed and the case is remanded to the trial court for sentencing.

NIX, C.J., and FLAHERTY, McDERMOTT, HUTCHINSON and PAPADAKOS, JJ., join this opinion of the court.

and sentence, then the Commonwealth may proceed under the Detainers Act to gain temporary custody of the fugitive so that he may be tried in Pennsylvania. We are not prepared to say that the Commonwealth must always seek the return of a wanted person by initiating extradition proceedings. These matters do not arise in the abstract. In all cases there is a prosecuting attorney who must use his discretion and make decisions concerning procedures in dealing with other jurisdictions. The Commonwealth's duty is to act reasonably, not perfectly.

8. The appellee's omnibus pre-trial motion included, inter alia, a motion to dismiss for failure on the part of the Commonwealth to bring the appellee to trial within 180 days of the filing of the criminal complaint against him. It also included a motion to dismiss for failure to call appellee's case for trial during the next term of court following his return to Pennsylvania. On November 23, 1983 a hearing on appellee's omnibus motion was held before the Honorable Dale F. Shughart, S.J. In an opinion and order of December 9, 1983, Judge Shughart denied appellee's omnibus pre-trial motion, including the motions to dismiss.

HUTCHINSON, J., filed a concurring opinion joined by McDERMOTT, J.

ZAPPALA, J., filed a dissenting opinion.

## JUDGMENT

ON CONSIDERATION WHEREOF, it is now hereby ordered and adjudged by this Court that the Order of the Superior Court is reversed and the case is remanded to the trial court for sentencing.

HUTCHINSON, Justice, concurring.

I join the majority opinion. In addition, I would not accord the prophylactic benefits of Rule 1100 to fugitives.

McDERMOTT, J., joins in this concurring opinion.

ZAPPALA, Justice, dissenting.

I dissent. This Court has once again abdicated its responsibility in applying our own court-made rules. So as to avoid following the clear and unambiguous mandate of Rule 1100, the majority has seen fit to once again redraft the Rule by interpretation rather than by amendment. This time, the majority has done so through a new definition of the word "diligence".

As strange as it may seem, a distinguished "author" by the name of Noah Webster has defined "diligence" as "the attention and care legally expected or required of a person." *Webster's Ninth New Collegiate Dictionary*, 355 (1984). This Court now defines "diligence" to encompass ineptitude, incompetence and slovenliness to reach a desired result.

In the majority's haste to justify the result, it has abdicated its responsibility in applying our court-made rule. The action of the Appellee is irrelevant for the blame for the discharge must be placed upon the Commonwealth, not this Court, for the ineptitude of its prosecuting officers in misapplying the law. Specifically, under the Uniform Extradition Act, the Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S. § 9121 et seq., the Commonwealth may request the return of a person charged in this Commonwealth with a crime if that person is imprisoned or is being held for trial

in another state provided that the Commonwealth agrees to return that person as soon as the prosecution in this Commonwealth is terminated. 42 Pa.C.S. § 9126. As the authorities in Virginia correctly advised the Commonwealth in this case, the Interstate Agreement on Detainers Act, Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S. § 9101, is applicable only to those persons who are serving terms of imprisonment. Since the Appellee was not imprisoned, the Virginia authorities acted correctly in not complying with the Commonwealth's request. Therefore, the delay in being brought to trial was not caused by the Appellee but by the ineptitude and incompetence of the Commonwealth in failing to pursue the Appellee under the proper statute.

Accordingly, now even when the Commonwealth is inept, that ineptitude is attributable to a defendant. With this interpretation of Rule 1100 I cannot agree. (*See, Commonwealth v. Monosky,* 511 Pa. 148, 511 A.2d 1346 (1986), Zappala, J. dissenting; *Commonwealth v. Terfinko,* 504 Pa. 385, 474 A.2d 275 (1984), Zappala, J. dissenting; *Commonwealth v. Crowley,* 502 Pa. 393, 466 A.2d 1009 (1983), Zappala, J. dissenting; *Commonwealth v. Green,* 503 Pa. 278, 469 A.2d 552 (1983), Zappala, J. dissenting; *Commonwealth v. Manley,* 503 Pa. 482, 469 A.2d 1042 (1983), Zappala, J. dissenting; and *Commonwealth v. Guldin,* 502 Pa. 66, 463 A.2d 1011 (1983), Zappala, J. dissenting.