535 A.2d 1152

**COMMONWEALTH of Pennsylvania**

v.

**Michael H. LLOYD, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 23, 1987.

Filed Jan. 11, 1988.

Petition for Allowance of Appeal
Denied June 1, 1988.

68

Stuart A. Cilo, Burnham, for appellant.

John T. Robinson, District Attorney, Middlesburg, for Com., appellee.

Before CAVANAUGH, BROSKY and WATKINS, JJ.

BROSKY, Judge:

This is an appeal from the Judgment of Sentence entered after a jury trial on convictions of felony escape, aggravated assault, reckless endangerment, terroristic threats, kidnapping, unlawful restraint and criminal conspiracy.

Appellant raises three errors to this court: First, whether the trial court erred in denying his Motion to dismiss the above charges on the basis of the Commonwealth's violation

of Pa.R.Crim.P. 1100; secondly, whether the trial court also committed error in denying appellant's Motion to dismiss the above charges because the Commonwealth did not comply with the provisions of the Interstate Compact on Detainers, specifically, 42 Pa.C.S.A. § 9101, Article III(a); and thirdly, whether the trial court erroneously neglected to advise appellant of the potential prejudice to him by failing to perform a proper colloquy with him on the question of counselled representation. Perceiving no error, we affirm.

Appellant was convicted by a Snyder County Common Pleas Court jury on June 20, 1984, of the above charges. He was sentenced on September 17, 1984, to an aggregate term of eight and one-half to twenty years on the most serious charge, kidnapping, a felony of the first degree. The sentences on the other charges were to run concurrently with the kidnapping sentence. An appeal was taken from this judgment of sentence on October 8, 1984.[1]

We will consider the first two issues together.

Appellant asserts that he was brought to trial beyond the 180–day period in Snyder County after he was advised that a detainer had been lodged against him and after he allegedly informed, in writing, the District Attorney of Snyder County and the trial court of the place of his incarceration and his request for a final disposition of the charges against him pursuant to Article III(a) of the Agreement on Detainers, 42 Pa.C.S.A. § 9101.

This voluminous and procedurally complex record discloses that appellant was a fugitive from Pennsylvania on the instant charges, having escaped on June 18, 1983, from the Snyder County Jail (N.T. 6–11–84, 9–10) and fled to the State of Wyoming. While in that jurisdiction, appellant was arrested and charged by the United States Government on approximately July 1, 1983, for violating the United States Crimes Code, specifically, 18 U.S.C. §§ 922(a)(6), and (h) and

---

1. We are also filing a disposition on a non-consolidated companion case relating to this same appellant's appeal of denial of post-conviction relief. *See Commonwealth v. Lloyd,* No. 693 Harrisburg, 1986, J. 58036/87.

924(a) for having made a false application to receive a firearm transported in interstate commerce and receiving said firearm while a probation violator. On July 20, 1983, appellant pleaded guilty to these four-count charges before the United States District Court for the District of Wyoming and was subsequently sentenced. The record does not disclose the date of sentence nor the duration thereof. Appellant was then transferred from the State of Wyoming to the Federal Penitentiary at Leavenworth, Kansas, on August 18, 1983. The District Attorney was also proceeding to obtain appellant's temporary custody but pursuant to Article IV of the Interstate Agreement (42 Pa.C.S.A. § 9101). This entire process lasted approximately six and one half months.

On July 25, 1983, the District Attorney wrote to appellant notifying the latter of his intention to secure appellant for prosecution on the instant charges then pending in Snyder County as soon as appellant's sentence on the aforementioned federal charges in the United States District Court in Wyoming had been handed down (Commonwealth's Exhibit No. 10). This letter was in response to appellant's letter to the District Attorney dated July 12, 1983 (Commonwealth's Exhibit No. 9), while incarcerated in a Cheyenne, Wyoming jail, informing the District Attorney of appellant's desire to waive extradition to Pennsylvania. This, incidentally, was prior to the entry of his guilty plea to the aforementioned federal charges on July 20, 1983. Appellant's second letter to the District Attorney, dated July 22, 1983, was in the nature of a "Formal Request Pursuant [sic] to 'The Interstate Agreement on Detainers,' [sic] For [sic] disposition of all charges outstanding in your county." (Defendant's Exhibit No. 33).

Appellant, after making his self-styled formal request of July 22, 1983, which he purports complies with Article III(a) of the said Agreement on Detainers, admits that he took no further action to process his release to Pennsylvania custody to be tried on the instant charges until he received a notice of a detainer from a District Justice in Oil City,

Venango County, Pennsylvania on September 20, 1983 (N.T. 6/13/87, 157). He then wrote a letter dated September 21, 1983, to the District Justice in Oil City "formally request [ing] disposition of that [Venango County] detainer in accordance with the Interstate Agreement on Detainers." (Defendant's Exhibit No. 41). Subsequently, On October 14, 1983, he received a notice of a detainer on the instant Snyder County charges (Defendant's Exhibit No. 43), pursuant to the initial September 12, 1983 Form 5 Request for Temporary Custody directed to the prison officials at Leavenworth Penitentiary (Defendant's Exhibit No. 43).

In the meantime, the District Attorney of Snyder County, in attempting to obtain temporary custody of appellant for trial on the Snyder County charges, first, by letter dated July 20, 1983 (Commonwealth's Exhibit No. 1) to the U.S. Attorney's Office in Cheyenne, Wyoming, inquired whether the United States Government would release appellant to the temporary custody of Pennsylvania to be tried on the Snyder County charges prior to appellant's prosecution and sentencing in Federal Court in Wyoming. Mr. Robinson, the District Attorney of Snyder County, was informed by David Kern, an Assistant United States Attorney for the District of Wyoming, that appellant had already pleaded guilty to the federal charges on July 20, 1983 and was awaiting sentencing (Commonwealth's Exhibit No. 2). He was subsequently informed by the prison authorities at Leavenworth that appellant would not be released from federal custody at Leavenworth to the custody of Pennsylvania because of prior escape episodes when this procedure had been utilized on previous occasions. (N.T. 6/4/84, 173). Mr. Robinson further explained that the Leavenworth authorities refused to recognize both the Form 5 filed on September 12, 1983, requesting temporary custody of appellant and the resultant Notice of Untried Charges (Defendant's Exhibit No. 3) for that reason. The Leavenworth authorities also refused to acknowledge the Interstate Agreement by not responding to the Form 5 request for temporary custody (N.T. 6-4-87, 174). In addition, numerous telephone calls were made to Leavenworth by Mr.

Robinson and his two secretaries, Mrs. Houtz and Mrs. Schrump, to ascertain appellant's whereabouts and status when he was being transferred from Cheyenne, Wyoming, to Leavenworth and from there to Lewisburg Federal Penitentiary. (See their testimony of June 4, 1983, generally, N.T. 145–208, *passim*). It was thus necessary for Mr. Robinson, on October 6, 1983, to write to the United States Bureau of Prisons requesting a transfer of appellant from Leavenworth to the federal penitentiary in Lewisburg, Pennsylvania, "to expedite the custodial exchange process." (Commonwealth's Exhibit No. 5; *see also* N.T. 6–4–84, 173–76).

On October 19, 1983, the Leavenworth authorities advised Mr. Robinson that appellant would not be temporarily released to Snyder County for trial from Leavenworth (N.T. 6–4–84, 180). Thus, approximately from October 6, 1983, the date of the letter to the Prison Bureau, or October 11, 1983, the date of Mr. Robinson's telephone conversation with a Mr. Attig from Leavenworth, until December 6, 1983, the prosecuting officials in Snyder County were awaiting word on whether appellant would be or had been transferred from Leavenworth to the federal penitentiary in Lewisburg, Pennsylvania (N.T. 6–4–84, 179, 197). On approximately December 6, 1983, Mr. Robinson, by phone call to Lewisburg was only then made aware that appellant would be transferred to Lewisburg within that two-week period (N.T. 6–4–84, 180).

Although the record does not indicate the exact date of appellant's arrival from Leavenworth to Lewisburg, his transfer was completed approximately in late December 1983, or early January 1984. This is borne out by two letters in the record. One, dated January 9, 1984, from appellant to Mr. Robinson informs the latter of the actual event of appellant's transfer from Leavenworth to Lewisburg, requests that all correspondence be directed to appellant there and informs the District Attorney that appellant will be filing various pre-trial motions (Defendant's Exhibit No. 46). The other letter from appellant to the Clerk of

Courts of Snyder County, Pennsylvania, dated January 10, 1984, informs that official of appellant's address change, and requests copies of the criminal complaints filed against him and advises that he will be preparing pre-trial motions (Defendant's Exhibit No. 47). Immediately subsequent to the letter of January 9, 1984, the District Attorney of Snyder County, on January 10, 1984, prepared a Form 5 Request for Temporary Custody pursuant to Article IV(a) of the Agreement. This form was filed with the Prothonotary of the Snyder County Common Pleas Court on January 16, 1984 (Commonwealth Exhibit No. 6). Appellant then on January 12, 1984, initially refused to sign a Memorandum requesting the 30-day waiting period or waiving the applicable period as provided for in Article IV(a) of the Agreement (Defendant's Exhibit No. 38).

Accordingly, by letter dated January 13, 1984, Lewisburg officials informed Mr. Robinson that appellant had refused to waive the 30-day waiting period and would be given that time for the Governor to Act upon the prisoner's contest of transfer pursuant to Article IV(a) (Commonwealth's Exhibit No. 11). Nevertheless, by letter dated January 23, 1984, and filed on January 31, 1984, with the Prothonotary of Snyder County, appellant informed the trial court of his waiver of the 30-day time period (Commonwealth's Exhibit No. 12). Appellant was then released to the Commonwealth and brought to the Huntingdon State Correctional Facility on February 13, 1984, to await trial on the instant charges. Trial commenced in Snyder County Common Pleas Court on June 11, 1984, after exhaustive omnibus pre-trial and suppression motion hearings on June 4, 1984 and June 11, 1984, continuing on June 13, 1984 and June 19, 1984. Additionally, the trial court held a hearing on February 22, 1984, on appellant's Motion to dismiss as well as an arraignment hearing on May 2, 1984.

We find that the foregoing minute delineation of this protracted and complex scenario from which the instant appeal evolves is a necessary adjunct to an appreciation of the first two issues now before us.

Appellant claims that the Commonwealth violated Article III(a) (42 Pa.C.S.A. § 9101) of the Agreement on Detainers. The result of this violation, appellant insists, was the expiration of the 180–day period during which the Commonwealth is required to bring an accused to trial after an accused "cause[s] to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint...." (Article III(a), 42 Pa.C.S.A. § 9101). According to appellant, the run date on these charges was February 2, 1984, which is purportedly 180 days after the date appellant claims the District Attorney received appellant's request for final disposition, or August 4, 1983. After review of the exhaustive record in this case, we disagree.

Article III(a) (42 Pa.C.S.A. § 9101) provides:

§ 9101. Agreement on detainers

The Agreement on Detainers is hereby enacted into law and entered into by this Commonwealth with all other jurisdictions legally joining therein in the form substantially as follows:

Agreement on Detainers

The contracting states solemnly agree that:

.    .    .    .    .

Article III

(a) *Whenever a person has entered upon a term of imprisonment in a penal or correctional institution* of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made

of the indictment, information or complaint: Provided, That for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. *The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.*

Emphasis supplied.

Subpart (b) further requires:

(b) The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of corrections or other official having custody of him, who shall promptly forward it *together with the certificate* to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.

Emphasis supplied.

We consider it useful to our determination that no violation of either Rule 1100 or Article III occurred here to set forth the reasoning supportive of the trial court's denial of appellant's Motion to dismiss the charges as follows:

Court is now going to issue its ruling with respect to the various motions that have been filed both by Defendant and by the District Attorney. The first and in some ways the most important set of motions are those that have to deal with the Rule 1100 and the Interstate Agreement on Detainers as to the running of time.

With respect to the Interstate Agreement on Detainers, the Court—the critical question is whether or not the letters which were sent by Mr. Lloyd and received by the District Attorney and the Clerk of Court in early August of 1983, were sufficient to start the 180 days running

under Article III of the Interstate Agreement on Detainers.

While there is some case law to that affect, [sic] and I have the cases you have cited, Mr. Lloyd, it is the Court's view that the letters were insufficient for that purpose, because Article III requires not only the letter from the prisoner, but goes on to require further that the request of prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decision of state parole agency relating to the prisoner.

And there are other requirements with respect to the forwarding of those items to the prosecuting attorney. And it is this Court's opinion that for the prosecutor to be held to the running of 180 day based on those letters alone when the remaining requirements of Article III have not been complied with is not proper.

N.T. 6–18–84, 94–96.

. . . . .

Similarly, under Rule 1100 of the Pennsylvania Rules of Criminal Procedure, the Court, after hearing—and all of this has been after hearing in which the Defendant was present, the Court finds that the Commonwealth of Pennsylvania has proven that the Defendant was unavailable for trial under the provisions of Pennsylvania Rule of Criminal Procedure 1100(d) from June 19, 1983, to February 13, 1984, and so it determines that the Rule 1100 run date is August 11, 1984.

The Court recognizes that just because a person is incarcerated is not reason alone to assert that they [sic] are [sic] unavailable for trial during that period, [sic] and that the Rule 1100 applies to the Defendant in this case as it does to Defendant in any case. But the Court finds that the Commonwealth has exercised all due diligence in

attempting to bring the Defendant to trial promptly and in a speedy manner during the period from the filing of the complaint, June 19, 1983, until custody was actually obtained February 3, 1984.[2]

The letter from—letter or letters from Mr. Lloyd certainly put the District Attorney on notice that he did need [sic] to take some action, but he did that. Got [sic] no response to the Form 5 filed with Levenworth [sic]. Proper [sic] response was obtained in the filing of Form 5 at Lewisburg. Consequently [sic] did obtain custody February 13th.

N.T. 6–18–84, 96–97.

.    .    .    .    .

[T]he Defendant's corresponding motion for dismissal based either on the Interstate Agreement for Detainers or Rule 1100 is denied.

N.T. 6–18–84, 97–98.

■ Appellant argues that the Commonwealth violated Article III(a)'s requirement that a prisoner be brought to trial within 180 days after notifying the District Attorney of Snyder County of his request for final disposition of the outstanding charges pending in Snyder County. Appellant wrote informal letters to the District Attorney of Snyder County dated July 13, 1983 and July 22, 1983. The former communication requests, without more, the prosecutor to take "necessary steps to obtain [appellant's] return." (Commonwealth's Exhibit No. 9). The latter, a mere one page informal letter, "purports to be appellant's Formal Request Pursuant [sic] to 'the Interstate Agreement on Detainers,' For disposition of All Charges [sic] outstanding in your county." (Defendant's Exhibit No. 33). However, the record here reveals a deficiency in this procedure, in terms of the Agreement's provisions, to trigger the 180–day requirement of Article III(a). That is, appellant's request on both occasions was unaccompanied by

2. The correct date of receipt of custody of appellant by the Commonwealth was February 13, 1984.

"a certificate of the appropriate official having custody of. the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner."

*Id.* Moreover, the record is devoid of any indication that appellant complied with Article III(b), *supra,* in submitting his "requests."

In *Commonwealth v. Wagner,* 221 Pa.Super. 50, 289 A.2d 210 (1972), this court held that the procedure set forth under subpart (b) of Article III thereof could not be ignored by the prisoner. At the time of Wagner's trial, the United States was not yet a party to this compact.[3] Therefore, the Agreement on Detainers was inapplicable to Wagner, a federal prisoner and fugitive from this Commonwealth seeking disposition of his Pennsylvania charge of larceny. Nevertheless, our court opined that the procedure set forth in then 19 P.S. § 881 to be followed by a Pennsylvania prisoner awaiting disposition of untried Pennsylvania charges, was analogous to that required by the Interstate Agreement. Subsequently, in *Commonwealth v. Eisenhauer,* 232 Pa.Super. 336, 331 A.2d 786 (1974), we determined that Eisenhauer's failure to inform his Maryland prison custodians of his demand for final disposition of the charges pending in Pennsylvania, from which jurisdiction he was a fugitive, vitiated the Commonwealth's obligation to bring him to trial within 180 days of his purported request to the Berks County District Attorney. The *Eisenhauer* court noted that Eisenhauer's failure to comply with this provision of the Interstate Agreement, alone, was sufficient to toll the running of the 180–day period. *Cf. Commonwealth v. Gonce,* 320 Pa.Super. 19, 466 A.2d 1039 (1983) (improper delivery of request for final disposition to County Clerk of Courts, rather than to the County District Attor-

---

3. The United States adopted the Interstate Agreement on December 9, 1970, effective March 9, 1971, 18 U.S.C.App.

ney, as required by Article III, did not entitle the prisoner to be tried within 180 days of his alleged request). *See also Johnson v. Cuyler,* 535 F.Supp. 466 (E.D.Pa.1982), *aff'd* 714 F.2d 123 (3d Cir.1982) (federal court interpretation of Article III requires letter requests for final disposition of state charges be proper; if not, then letter requests are not sufficient to invoke the time constraint of Article III).

We do not construe appellant's letters of July 13, 1983, and July 22, 1983 to be proper requests contemplated by Article III(a) for the additional reason that at the time of those requests, appellant was not a sentenced prisoner who "has entered upon a term of imprisonment in a penal or correctional institution of a party state" (Id.) Unless and until so sentenced, the provisions of the Interstate Agreement are inapplicable to a prisoner. *Commonwealth v. Koonce,* 511 Pa. 452, 515 A.2d 543 (1986); *Commonwealth v. Johnson,* 305 Pa.Super. 310, 451 A.2d 546 (1982); *Commonwealth v. Heath,* 288 Pa.Super. 119, 431 A.2d 317 (1981). *See also Commonwealth v. Alexander,* 318 Pa.Super. 344, 464 A.2d 1376 (1983); *Commonwealth ex rel. Coleman v. Cuyler,* 261 Pa.Super. 274, 396 A.2d 394 (1978). While we are unable to ascertain from the record the exact date of sentencing on the federal charges in the United States District Court for the District of Wyoming, we do know that this occurred some time subsequent to appellant's second letter dated July 22, 1983. This is so because by letter dated July 26, 1983 (Commonwealth Exhibit No. 2), David A. Kern, the Assistant United States Attorney assigned to prosecute appellant's firearm charge in federal court in Wyoming, informed Mr. Robinson that appellant had pleaded guilty on July 20, 1983, and would be sentenced upon completion of the presentence report.

Thus, appellant's "requests" of July 13, 1983, and July 22, 1983—the only documents we can ascertain of record which pretend to be anything even approaching Article III requests—appear deficient in two respects: namely, neither letter carries with it the certificates required by Article III(a) and (b) and both letters were sent to the District

Attorney of Snyder County prior in time to appellant's entry upon a term of imprisonment—a prerequisite under Article III(a)—pursuant to his sentencing in federal court in Wyoming. For these reasons, we conclude that the Commonwealth was relieved of any responsibility under Article III(a) to try appellant within 180 days after delivery to the prosecutor of his purported requests for final deposition of the charges.

■ We turn now to address appellant's corollary argument that the Commonwealth violated Rule 1100 of the Pennsylvania Rules of Criminal Procedure and determine this to be equally meritless. Appellant claims that the Commonwealth ignored, in particular, the provisions of Pa. R.Crim.P. 1100(d) which sets forth periods of excludable time. He argues that he was unavailable pursuant to Rule 1100(d)(3)(i) but only for the period of his escape through the time he claims the District Attorney should have received his purported request for final disposition, or from June 19, 1983, through August 4, 1983. *See Commonwealth v. Carter*, 329 Pa.Super. 490, 478 A.2d 1286 (1984) (if authorities diligent in ascertaining defendant's whereabouts, time defendant is fugitive is excludable, and defendant does not contest this point); *Commonwealth v. Radogna*, 317 Pa.Super. 586, 464 A.2d 478 (1984) (same). Appellant does not consider the period from June 19, 1983 through February 13, 1984, the date on which appellant's custody was finally relinquished to Pennsylvania authorities, as excludable under Rule 1100(d)(3)(i) despite the Commonwealth's record difficulty in procuring his temporary custody from federal prison authorities. The record chronology, as set forth *supra*, demonstrates that the Commonwealth's attempts to secure temporary custody of appellant spanned a period from approximately mid-August 1983, to mid-February 1984. This showing amply satisfies us that the Commonwealth exhibited due diligence in attempting to secure the custody of appellant for trial and that the time encompassed in obtaining appellant's availability for trial in this jurisdiction is excludable for the purpose of Rule 1100.

■■■ Due diligence is a fluid concept which escapes precise definition; rather, it must be evaluated on a case by case basis. In this regard, the Commonwealth's efforts to secure a defendant for trial must meet the standard of reasonability. And, for the purpose of Rule 1100(d), a defendant incarcerated in another jurisdiction will be deemed "unavailable" for the period of time during which his presence, despite the Commonwealth's duly diligent efforts, cannot otherwise be obtained. *Commonwealth v. Maxwell*, 355 Pa.Super. 575, 513 A.2d 1382 (1986); *allocatur granted*, 513 Pa. 633, 520 A.2d 1384 (1987); *Commonwealth v. DeMarco*, 332 Pa.Super. 315, 481 A.2d 632 (1984); *Commonwealth v. Carter, supra.* Moreover, "[f]or purposes of subparagraph (3)(i) [of Rule 1100(d) ], in addition to any other circumstances precluding the availability of the defendant ... the defendant should be deemed unavailable for the period of time during which ... a responding jurisdiction delayed ... extradiction...."[4] Comment to Pa.R.Crim.P. 1100; *Commonwealth v. DeMarco, supra.*

While involving a trek through the diplomatic channels of the United States Departments of State and Justice to obtain extradition of a defendant from the Canadian government, we find the factors employed in analyzing due diligence considerations by the court in *Commonwealth v. DeMarco, supra*, equally applicable here. The court began by noting that due diligence is a concept which defies rigidness but, rather, must be determined for each case. There, as here, the Commonwealth authorities relied on the authorities from the responding jurisdiction to keep the former apprised of the progress of appellant's extradition proceedings. Once it is determined that the Commonwealth has followed the procedure suggested by the custodian

---

**4.** The Uniform Extradition Act, 42 Pa.C.S.A. § 9121 *et seq.*, is inapplicable to sentenced prisoners. *Commonwealth v. Alexander*, 318 Pa. Super. 344, 464 A.2d 1376 (1983); *Commonwealth ex rel. Coleman v. Cuyler*, 261 Pa.Super. 274, 396 A.2d 394 (1978). No other distinction between the two acts would compel a different result under the Extradition Act. Both the Act and the Agreement provide substantially the same protection even though procedurally they differ, *id.*, nor does appellant make a challenge in this regard.

jurisdiction and has justifiably relied on the latter's assertions, due diligence is firmly established. *Id.* Finally, any period of inactivity is excluded where, as here, the Commonwealth believed, not unreasonably, that it had pursued proceedings for the prisoner's return to the Commonwealth to the fullest extent possible. *Id. Cf. Commonwealth v. Carter, supra* (due diligence established where defendant, a federal prisoner awaiting trial on federal charges, would not be released to Commonwealth until conclusion of federal trial, and Commonwealth could not do much else except to lodge detainer against prisoner and pursue his transfer to the Commonwealth in a timely and viligant fashion after his federal trial concluded). As a result, the *DeMarco* court held that because defendant there was unavailable for trial until his return to Pennsylvania from Canada, his trial began well within 180 days of his availability.

Instantly, appellant was released to the custody of this Commonwealth on February 13, 1984, from federal confinement at Lewisburg. The trial court determined, and correctly, we think, "that the Defendant was unavailable for trial under the provisions of Pennsylvania Rule of Criminal Procedure 1100(d) from June 19, 1983, to February 13, 1984, and so it determines that the Rule 1100 run date is August 11, 1984." (N.T., 6–18–84, 96). Appellant's trial began on June 11, 1984, with the selection of the jury[5] (N.T., 6–18–84, 96), which was exactly two months before the run-date of August 11, 1984 (see N.T., 6–18–84, 96). Even if the Commonwealth could have somehow obtained appellant's custody more swiftly, by proceeding, for example, under the Uniform Extradiction Act, 42 Pa.C.S.A. § 9121 *et seq.*,[6] prior to appellant's sentencing in federal court in Wyoming, it is highly unlikely that this end could have been realized in light of the Leavenworth officials' refusal to release appellant and their reasons therefor. *See Commonwealth v. Koonce, supra; Commonwealth v. Car-*

5. *See Commonwealth v. Fooks,* 345 Pa.Super. 145, 497 A.2d 1346 (1985) (trial commences for purpose of Rule 1100 when jury is empaneled or voir dire has begun).

6. *See supra* note 4.

*ter, supra.* Due diligence only requires the showing of a reasonable effort to procure a defendant for trial, not perfect vigilance and punctiliousness. *Commonwealth v. Maxwell, supra; Commonwealth v. DeMarco, supra; Commonwealth v. Carter, supra.* It is measured by what was done by the Commonwealth, not by what was not done. *Commonwealth v. DeMarco, supra.*

This is not the case where the Commonwealth sat by and did nothing to secure appellant's presence for trial. Instead, subsequent to imposition of sentence on appellant by the United States District Court for the District of Wyoming, and on September 12, 1983, the District Attorney filed its initial Form 5 request for temporary custody directed to the Leavenworth prison officials. Through numerous telephone calls between the Leavenworth officials and the District Attorney's Office, Mr. Robinson was able to ascertain that the prison officials at Leavenworth would not release appellant. This resulted in Mr. Robinson's October 6, 1983, letter to the United States Bureau of Prisons requesting appellant's transfer to Lewisburg. This event ultimately took place in late December 1983 or early January 1984. On February 9, 1984, the Commonwealth was advised that because appellant initially entered a contest to his return to Pennsylvania subsequent to his transfer to Lewisburg but failed to process it within the 30–day time limitation, the Commonwealth was being granted temporary custody of appellant. Appellant was surrendered to the Commonwealth on February 13, 1984, and lodged in the Huntingdon State Correctional Institution. Pursuant to Article IV(b) of the Detainers' Agreement, appellant's trial commenced on June 11, 1984, which was within the 120–day period prescribed by that Article.

In view of the foregoing, we conclude that no violation of appellant's speedy trial rights occurred either under Article III(a) of the Detainers' Agreement or by ignoring the mandates of Pa.R.Crim.P. 1100.

Appellant thirdly asserts that the trial court did not warn him of the possibility of prejudice attendant to *pro se*

representation and failed to conduct the proper colloquy to determine if appellant's waiver of counsel was knowing, voluntary and intelligent.

■ First, the United States Supreme Court has held that an accused's right to forego counselled representation is of constitutional dimension. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Our courts have followed this edict. *Commonwealth v. Szuchon,* 506 Pa. 228, 484 A.2d 1365 (1984); *Commonwealth v. Davis,* 479 Pa. 274, 388 A.2d 324 (1978); *Commonwealth v. Celijewski,* 324 Pa.Super. 185, 471 A.2d 525 (1984); *Commonwealth v. Palmer,* 315 Pa.Super. 601, 462 A.2d 755 (1983). Of course, this right is not without exception and is tempered by a record showing of a knowing and intelligent abandonment thereof. *Id.*

■ We gather from an examination of appellant's brief that the primary focus of his concern is on the allegedly deficient colloquy at the time of his arraignment on May 2, 1984, and at the February 22, 1984, hearing in his Motion to dismiss. He initially states that his arraignment colloquy "arguably satis[fies] the requests of [Criminal Procedure] Rule 318(c)." Appellant's Brief p. 15. However, he then asserts: "The colloquy at arraignment was clearly inadequate and did not meet even the minimal standards suggested by the Comments to Rule 318(c), and certainly did not meet the 'comprehensive and penetrating' inquiry required by the cases." Appellant's Brief, p. 15. Pennsylvania Rule of Criminal Procedure 318(c) states: "Proceedings Before a Judge. When the defendant seeks to waive the right to counsel after the preliminary hearing, the judge shall ascertain from the defendant, on the record, whether this is a knowing, voluntary and intelligent waiver of counsel."

Our examination of the aforesaid colloquy conducted at arraignment on May 2, 1984, reveals that the trial judge covered each of the six informational points to be elicited from a criminal defendant to test his awareness of the importance and effect of the waiver consequences. Appellant's assertion to the contrary is belied by the record. *See*

N.T. 5-2-84, 2-4. *Commonwealth v. Thier*, 354 Pa.Super. 7, 510 A.2d 1251 (1986); Comment following Pa.R.C.P. 318.[7] The trial court repeatedly reminded appellant that his standby appointed counsel, Harry L. Wilcox, was available to him for consultation as needed. We find that this colloquy demonstrates that appellant's choice to abandon counselled representation was a knowing and deliberate one, especially in light of the fact that appellant had at his disposal standby counsel. *Commonwealth v. Davis, supra; Commonwealth v. Dooley*, 332 Pa.Super. 227, 481 A.2d 336 (1984); *Commonwealth v. Celijewski, supra; Commonwealth v. Palmer, supra;* Pa.R.Crim.P. 318(d).

Our determination in this regard is not altered as a result of our review of the February 22, 1984, proceeding on appellant's Motion to dismiss. Appellant had available to him standby counsel, Michael T. Hudock, who was ultimately appellant's standby trial counsel. At the February 22, 1984 hearing appellant was asked if he had sufficient opportunity to consult with Mr. Hudock. He replied affirmatively (N.T. 2-22-84, 4). Appellant was then informed by the trial court that Mr. Hudock would represent him and was asked if he desired counselled representation. Appellant

7. The suggested inquiry reads as follows:

(1) That the defendant understands that he has the right to be represented by counsel, and the right to have free counsel appointed if he is indigent.

(2) That the defendant understands the nature of the charges against him and the elements of each of those charges.

(3) That the defendant is aware of the permissible range of sentences and/or fines for the offenses charged.

(4) That the defendant understands that if he waives the right to counsel he will still be bound by all the normal rules of procedure and that counsel would be familiar with these rules.

(5) That the defendant understands that there are possible defenses to these charges which counsel might be aware of, and if these defenses are not raised at trial, they may be lost permanently.

(6) That the defendant understands that, in addition to defenses, the defendant has many rights that, if not timely asserted, may be lost permanently; and that if errors occur and are not timely objected to, or otherwise timely raised by the defendant, these errors may be lost permanently.

Comment following Pa.R.Crim.P. 318.

responded that counsel's standby status would suffice for his (appellant's) purposes (*Id.*).

It is true, as we have stated, that the trial court's inquiry must delve into ascertaining whether an accused's relinquishment of his right to counsel is a knowing and intelligent one. *Commonwealth v. Suzchon, supra; Commonwealth v. Davis, supra; Commonwealth v. Thier, supra, Commonwealth v. Dooley, supra; Commonwealth v. Celijewski, supra; Commonwealth v. Palmer, supra.* It is also the law that any shortcoming relative to this colloquy cannot be gauged to the quality of an accused's self-representation nor justified on the basis of his prior experience with the system. *Commonwealth v. Celijewski, supra; Commonwealth v. Palmer, supra.* It is equally evident, however, that where, as here, standby counsel was available to confer with the accused, no need exists to review the colloquy for completeness by the same standards of a full waiver colloquy. *Commonwealth v. Palmer, supra; see* Comment to Rule 318, *supra* note 7. At the hearing on February 22, 1984, the trial court informed appellant that Mr. Hudock "will represent you in this matter, if you care to have him do so. Do you care to have him represent you?"

MR. LLOYD: Can he stand by if I need him?

THE COURT: All right. You [Mr. Hudock] stand by if he needs you.

N.T. 2–22–84, 4.

Where, as here, standby counsel has been appointed and where, as here, the trial court urged appellant to confer with counsel throughout, the full requirements of the Rule 318(c) colloquy (*supra* note 7) need not be met. *Commonwealth v. Palmer, supra.* This is termed a partial waiver which is, in effect, a constitutional exercise to proceed *pro se* and with counsel as distinct from the right to proceed *pro se* and without counsel. *Id.*

It bears noting that Mr. Hudock was ultimately appointed standby counsel for the trial, and the court informed appellant at that time that counsel was advised to confer with

appellant during recess, that the manner in which appellant could utilize counsel's services was as the former wished and that appellant could desire Mr. Hudock to conduct the actual trial as appointed counsel if he (appellant) would only inform the Court on the record (N.T. 6–19–84, 11–12). Again, we find that appellant exercised a knowing and deliberate choice to proceed as he did at the February 22, 1984 hearing, and he cannot now be heard to complain.

Judgment of sentence affirmed.