STATE OF HAWAII, Plaintiff–Appellee, v. **ELIJAH JACKSON, JR.**, Defendant–Appellant

NO. 14705

(CR. NO. 88–1781)

SEPTEMBER 20, 1991

BURNS, C.J., HEEN, J., AND CIRCUIT JUDGE YIM, ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY HEEN, J.

Defendant–Appellant Elijah Jackson, Jr. (Defendant), appeals from his July 17, 1990, jury trial conviction on three counts of Promoting a Dangerous Drug in the First Degree. Hawaii Revised Statutes (HRS) § 712–1241(1)(b)(ii)(A) (1985). We affirm.[1]

Defendant argues that the trial court erred when it:

(1) denied his Rule 48, Hawaii Rules of Penal Procedure (HRPP) (1977), motion to dismiss (Rule 48 Motion) for pre–trial delay;

(2) denied his motion for mistrial; and

(3) denied his motion to recall a state witness for further cross–examination.

We find no error.

---

[1] On June 27, 1991, this court issued a memorandum opinion in this case, which, upon the State's motion for reconsideration, we withdrew on July 11, 1991.

I.

A.

Defendant was first arrested on these charges by the Honolulu Police Department (HPD) on May 11, 1988. At that time, he was in federal custody on separate federal charges. The record shows that HPD released Defendant on the state charges pending investigation. However, Defendant remained in federal custody.

Defendant was indicted in this case on October 5, 1988, and he was arrested on the indictment on November 2, 1988. Arraignment was set for November 14, 1988. When Defendant failed to appear for arraignment, the State discovered he was still in federal custody, and the arraignment was continued to November 21, 1988. After numerous continuances, all due to Defendant's being in federal custody, Defendant was finally arraigned on July 20, 1989,[2] and trial was set for October 16, 1989.

On September 6, 1989, Defendant filed his Rule 48 Motion and a motion for bill of particulars.[3] On September 11 and 18, 1989, respectively, Defendant filed a motion to extend the date set by the court for filing pre–trial motions and a motion to compel discovery.[4] On September 21, 1989, the Office of the Public Defender moved to withdraw as counsel for Defendant. On October 2, 1989, the court continued the hearing on the motions filed on September 6, 11, and 18, 1989, and appointed substitute counsel on October 6, 1989. The trial did not begin as scheduled on October 16, 1989. On November 15, 1989, the substitute counsel moved the court for leave to withdraw as counsel. The motion was

---

[2] After the initial November 14, 1988 date, arraignment was scheduled for November 21, 1988, January 17, 1989, February 16, 1989, May 15, 1989, May 22, 1989, June 26, 1989, July 6, 1989, and finally July 20, 1989.

[3] The motion for bill of particulars was orally denied on April 9, 1990.

[4] The motion to compel discovery was granted on May 23, 1990.

granted, and the court again appointed counsel on December 6, 1989.[5] On December 11, 1989, Defendant's new counsel filed a motion to continue the trial. The motion was granted, and trial was rescheduled to the week of April 9, 1990. The Rule 48 Motion was rescheduled for April 3, 1990, but continued by stipulation of the parties to April 9, 1990. The Rule 48 Motion was denied on April 11, 1990. Trial began on May 30, 1990.[6]

## B.
### 1.

Defendant argues that the State knew he was in federal custody and knew that the federal authorities were holding him in Honolulu for most of the pre–trial period, but that the State did not use "the proper procedure" to obtain his presence prior to his arraignment on July 20, 1989. He contends that the period between his indictment and arraignment is not excludable under Rule 48(c)(5), HRPP. The State argues that the period is excludable due to Defendant's "unavailability" under Rule 48(c)(5), HRPP. We agree with the State.

### 2.

Rule 48(b)(1) requires the court to dismiss the charges against a defendant if trial on those charges is not commenced within six months of the defendant's arrest or the filing of the charge. In this case, the elapsed time between the indictment and trial obviously

---

[5] Defendant was without counsel from September 21, 1989, to October 6, 1989, and from November 15, 1989, to December 6, 1989.

[6] The record shows that after the Rule 48 Motion was denied on April 11, 1990, the circuit court held several status conferences on the case before it was firmly set for trial on May 30, 1990.

exceeded six months. However, Rule 48(c)(5), HRPP, provides that,

> periods of delay resulting from the absence or unavailability of the defendant[,]

shall be excluded when computing the elapsed time.

The rule does not define the term "unavailability." We look to the American Bar Association Standards for Criminal Justice Relating to Speedy Trial (Supp. 1986) (ABA Standards) for assistance. *See State v. Johnson*, 62 Haw. 11, 608 P.2d 404 (1980). 2 ABA Standards, Standard 12–2.3(e), at 12.27, states, in pertinent part:

> A defendant should be considered unavailable whenever his whereabouts are known but his presence for trial cannot be obtained or he resists being returned to the state for trial.

Under the ABA Standards the prosecution is not excused from seeking the defendant's presence. However, the period of the defendant's absence is excludable where the prosecutor's attempts are unsuccessful. *Id.*, Commentary, at 12.32.

The ABA Standards do not provide a gauge for examining the prosecution's efforts to obtain the defendant's presence. However, under the Federal Speedy Trial Act, 18 U.S.C.S. § 3161(h)(3)(B) (Law. Co–op. 1979),

> a defendant or an essential witness shall be considered unavailable whenever his whereabouts are known but his presence for trial cannot be obtained by due diligence[.]

We adopt the due diligence standard established by the Federal Speedy Trial Act.

Due diligence is a fluid concept that must be determined on a case by case basis, *Commonwealth v. Lloyd*, 370 Pa. Super. Ct. 65, 535 A.2d 1152 (1988); *Commonwealth v. DeMarco*, 332 Pa. Super. Ct. 315, 481 A.2d 632 (1984), and is a question of fact

subject to the clearly erroneous standard of review. *See Ingram v. State*, 703 P.2d 415 (Alaska App. 1985).

To establish due diligence, other jurisdictions have required the state to show "reasonable efforts" to procure the defendant for trial, *Commonwealth v. Lloyd*, 370 Pa. Super. Ct. at 83, 535 A.2d at 1162 ("Due diligence only requires the showing of a reasonable effort to procure a defendant for trial, not perfect vigilance and punctiliousness."), or a "good faith attempt" to secure defendant's presence for trial by (1) commencing formal proceedings, or (2) "making a sincere request from the sister state authorities." *People v. Jensen*, 109 Misc. 2d 813, ___, 441 N.Y.S.2d 333, 335 (1981).

3.

The trial court's findings of fact in deciding both the question of due diligence and a Rule 48 motion are subject to the clearly erroneous standard of review. *State v. Ferraro*, 8 Haw. App. 284, 800 P.2d 623 (1990). However, whether those facts fall within one of Rule 48(c)'s exclusionary provisions is a question of law, the determination of which is freely reviewable. *Id.* A lower court's finding of fact is clearly erroneous when even though there is evidence to support it, the appellate court, based on the entire record, is left with a definite and firm conviction that a mistake has been made. *Gadd v. Kelley*, 66 Haw. 431, 667 P.2d 251 (1983).

In its Findings of Fact and Conclusions of Law, the trial court found that the State had used due diligence in its attempts to procure Defendant's presence in these proceedings but, even though Defendant was in this state, "[t]he federal authorities just said no." We have examined the record and find the lower court's finding is not clearly erroneous. Therefore, the period of delay on account of Defendant's federal incarceration is excludable under Rule 48(c)(5), HRPP.

At the hearing on the Rule 48 motion in this case, a witness from the prosecuting attorney's office, whose duties included arranging for the presence in state court of defendants held in federal custody, testified that she made numerous contacts with the United States Marshal's (Marshal) office regarding Defendant, beginning on November 17, 1988. She testified that she attempted to get the Marshal to bring Defendant to circuit court for arraignment or to accept service of a subpoena *ad prosequendam*. Her efforts were unsuccessful, because the Marshal refused to accept service or to give up custody of Defendant.[7]

4.

Defendant argues, however, that the State should have done more to try to obtain Defendant's appearance, although he does not indicate what else could have been done. The argument is without merit.

In determining whether a state used due diligence to procure a defendant's presence for trial, the focus is on what was done by the state rather than on what was not done. *Commonwealth v. Lloyd*, *supra*; *see also Ingram v. State*, 703 P.2d at 431 ("In determining whether due diligence has been shown, our primary emphasis must be on the reasonableness of the efforts actually made, not on the alternatives that might have been available."). It has been held that when authorities follow the procedure suggested by the custodian jurisdiction, justifiably relying on its assertions, then due diligence is established. *Commonwealth v. Lloyd, supra*. Defendant has failed to convince us that the State used less than due diligence in this case.

---

[7] Defendant's first federal trial on the federal charges ended in a mistrial. He was subsequently sent to the mainland for a mental evaluation. On his return he was tried again and convicted of the federal charges. Only after the federal conviction did the Marshal agree to accept the subpoena *ad prosequendam*.

## C.

The total pre–trial delay in this case was 602 days. The 231 days between November 17, 1988, when the State first attempted to get the Marshal to produce Defendant, and July 6, 1989, when Defendant failed to appear for his eighth scheduled arraignment, was properly excluded pursuant to Rule 48(c)(5), HRPP.[8] That period of 231 days coupled with the 217 days excludable on account of Defendant's Rule 48 Motion, and a continuance of the trial date on Defendant's motion,[9] totals 448 days. The remaining delay of 154 days did not violate the six month pre–trial delay limitation under Rule 48.

## II.

When the confidential informant in this case left the witness stand, she was followed out a side door of the courtroom by two men in mufti, with what the court described as "court tags" on their pockets. Arguing that the action was prejudicial in that it could cause the jury to think that the witness had something to fear from Defendant, Defendant moved for a mistrial. The court denied the motion and instructed the jury as follows:

> One final matter by way of explanation and for your explanation [sic]. You noticed that when Ms. Sturrup left

---

[8] On July 6, 1989, Defendant was not present for a scheduled arraignment. He was still in federal custody housed at the Halawa Medium Security Facility. The Facility had lost the writ of habeas corpus served on it by the State and failed to produce Defendant for the arraignment. We concur in the trial court's refusal to exclude the period between July 6, 1989, and July 20, 1989, when Defendant was finally arraigned.

[9] Defendant does not argue that any part of the delay after he filed his Rule 48 Motion was not excludable. Moreover after reviewing the record we are convinced that the 217 days' delay occasioned by Defendant's Rule 48 motion and other motions listed above are excludable.

the witness stand, she did not leave through the main entrance of the courtroom. Rather, she left through a side door. And she was followed by two individuals with court tags on their pockets. Those two individuals are security personnel. But you should be aware that their presence has nothing to do with Mr. Jackson. You should draw absolutely no inference whatsoever that Ms. Sturrup was receiving any special treatment in the courtroom because Mr. Jackson is in here because that is not the case. That has to do with arrangements that were made wholly separate and apart from Mr. Jackson.

Defendant argues that the event deprived him of the right to have his case decided by an impartial jury, in violation of his due process right to a fair trial, since the prejudice that resulted from the event was so great that the cautionary instruction could not rectify it.

A central principle of the right to a fair trial is that " 'one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial.' " *Holbrook v. Flynn*, 475 U.S. 560, 567, 106 S. Ct. 1340, 1345, 89 L. Ed. 2d 525, 533 (1986) (quoting *Taylor v. Kentucky*, 436 U.S. 478, 485, 98 S. Ct. 1930, 1934, 56 L. Ed. 2d 468, 475 (1978)). Due process requires not only the absence of actual bias, but that the court endeavor to prevent even the *probability* of unfairness. *Estes v. Texas*, 381 U.S. 532, 85 S. Ct. 1628, 14 L. Ed. 2d 543 (1965).

Our determination of this issue turns on the question of whether or not the event was inherently prejudicial to Defendant. *State v. Castro*, 69 Haw. 633, 756 P.2d 1033 (1988). A courtroom arrangement or procedure is inherently prejudicial when it poses an unacceptable threat to the defendant's due process right to a fair trial. *State v. Castro, supra; Estes v. Texas*, 381 U.S. at 542–43, 85

S. Ct. at 1633, 14 L. Ed. 2d at 550 ("at times a procedure employed by the State involves such a probability that prejudice will result that it is deemed inherently lacking in due process").

> [T]he requirement of due process of law in judicial procedure is not satisfied by the argument that men of the highest honor and the greatest self–sacrifice could carry it on without danger of injustice. Every procedure which would offer a *possible* temptation to the average man . . . to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear, and true between the State and the accused, denies the latter due process of law.[] [*Tumey v. Ohio*, 273 U.S. 510, 532, 47 S. Ct. 437, 532, 71 L. Ed. 749, 758 (1927).] (Emphasis supplied.)

*Estes v. Texas*, 381 U.S. at 543, 85 S. Ct. at 1633, 14 L. Ed. 2d at 550 (1965).

In *Castro, supra*, the defendant sat shackled in the courtroom on the court's order while the complaining witness testified. The supreme court found the practice to be inherently prejudicial and not justified by an essential state interest. *Id.* In our view, the event in this case was not so fraught with the probability of prejudice as to be inherently prejudicial.

As the Supreme Court noted in *Holbrook v. Flynn, supra*, the use of identifiable security officers is not the type of courtroom practice that is inherently prejudicial, in light of the wide range of inferences a juror might draw from their presence. Furthermore, given the variety of ways such officers can be used, the fact that the security personnel in the present case followed the witness out of the courtroom does not create a presumption that this practice is inherently prejudicial, *see Holbrook v. Flynn, supra*, since the witness had just testified regarding her own arrest on drug charges and subsequent participation in the undercover operation.

The next inquiry, then, is whether Defendant demonstrated actual prejudice. *Holbrook v. Flynn, supra; see State v. Castro, supra.* Although the event in this case may have created some question in the jurors' minds as to its meaning, it was of such a fleeting nature that we are not convinced that Defendant suffered any prejudice, and Defendant has failed to articulate any actual prejudice. Thus, Defendant has failed to carry his burden. *Holbrook v. Flynn, supra.* Additionally, the jury is presumed to adhere to the court's instruction that it should draw no inference from the event. *State v. Estrada,* 69 Haw. 204, 738 P.2d 812 (1987).

### III.

Shortly after the confidential informant had left the court-room, the court recessed for lunch. After the recess, Defendant moved the court to recall her as a witness for further cross-examination. Defense counsel advised the court that shortly after the complaining witness left the courtroom she appeared before Judge Wendell K. Huddy and pleaded guilty to a charge of Theft in the First Degree based on welfare fraud. The prosecuting attorney informed the court that the complaining witness' plea was entered in a case completely separate from and unconnected to the instant case. Defendant argued that he should be allowed to use the "conviction" to impeach the complaining witness in accordance with Rule 609, Hawaii Rules of Evidence (HRE) (1985). Rule 609(a), HRE, reads in pertinent part as follows:

> **Rule 609 Impeachment by evidence of conviction of crime.** (a) General rule. For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime is inadmissible except when the crime is one involving dishonesty.

We have reviewed the record in this case and, in view of the overwhelming evidence against the Defendant, we conclude that the trial court did not abuse its discretion in denying Defendant's motion to recall the confidential informant. Even if, as Defendant argues, the guilty plea prior to sentencing was a conviction, it came after the witness' testimony, and the lower court's decision was a proper exercise of its discretion. *State v. Sugimoto*, 62 Haw. 259, 614 P.2d 386 (1980).

Affirmed.

*Charles B. Fey* on the brief for defendant–appellant.

*Charlotte J. Duarte*, Deputy Prosecuting Attorney, on the brief for plaintiff–appellee.