**Electronically Filed
Supreme Court
SCWC-18-0000350
12-DEC-2019
10:45 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---oOo---

_____

STATE OF HAWAIʻI,
Respondent/Plaintiff-Appellee,

vs.

CHARLY HERNANE, also known as CHARLIE HERNANE,
Petitioner/Defendant-Appellant.

_____

SCWC-18-0000350

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-18-0000350; 1PC111000699)

DECEMBER 12, 2019

RECKTENWALD, C.J., NAKAYAMA, McKENNA, AND WILSON, JJ., AND
CIRCUIT JUDGE AYABE IN PLACE OF POLLACK, J., RECUSED

OPINION OF THE COURT BY McKENNA, J.

## I.    Introduction

We hold that the time period a defendant continues to be

held in State custody in a mainland prison after his conviction

is set aside and a new trial ordered is not excludable under Hawai'i Rules of Penal Procedure ("HRPP") Rule 48(c)(5) (2000)[1] on the grounds the time period was "caused by the . . . unavailability of the defendant."  The Circuit Court of the First Circuit[2] therefore erred in denying Defendant Charly Hernane's ("Hernane") motion to dismiss indictment for violation of HRPP Rule 48.  As Hernane's conviction is set aside, we therefore need not address Hernane's second question on certiorari as to whether the circuit court's responses to jury communications constituted impermissible Allen charges.  See State v. Villeza, 72 Haw. 327, 334, 817 P.2d 1054, 1058 (1991) (quoting Allen v. United States, 164 U.S. 492 (1896) (explaining that an Allen charge directs members in the minority of a

---

[1]     HRPP Rule 48 provides in relevant part as follows:

> . . . .
> **(b) By court**. . . .[T]he court shall, on motion of the defendant, dismiss the charge, with or without prejudice in its discretion, if trial is not commenced within 6 months:
> . . . .
> (3) from the date of . . . order granting a . . . remand, in cases where such events require a new trial.
> . . . .
> **(c) Excluded periods**. The following periods shall be excluded in computing the time for trial commencement:
> . . . .
> (5) periods that delay the commencement of trial and are caused by the absence or unavailability of the defendant;
> . . . .

[2]     The Honorable Rom A. Trader presided.

deadlocked jury to reconsider their views in light of the views of the majority)).

Based on the Rule 48 violation, however, which requires dismissal of the charge against Hernane, we vacate the Intermediate Court of Appeal's ("ICA") January 11, 2016 judgment on appeal and the circuit court's October 22, 2013 judgment of conviction and sentence and remand this case to the circuit court for further proceedings consistent with this opinion.[3]

## II.  Background

### A.    Factual and Procedural Background Preceding Trial on Remand[4]

On May 18, 2011, a grand jury charged Hernane by indictment with murder in the second degree of his mother, Teresita Dumalan Hernane ("mother"), in violation of Hawai'i Revised Statutes ("HRS") §§ 707-701.5 (Supp. 1986)[5] and 706-656 (Supp. 1996).[6]  On

---

[3]     It is for the circuit court to address whether the Rule 48 dismissal should be with or without prejudice, applying the factors set out in State v. Estencion, 63 Haw. 264, 625 P.2d 1040 (1981):

> In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and the circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

Estencion, 63 Haw. at 269, 625 P.2d at 1044.  See also State v. Choy Foo, 142 Hawai'i 65, 414 P.3d 117 (2018).

[4]     The facts in this section are summarized from testimony at Hernane's February 5, 2018 retrial.

[5]     HRS § 707-701.5 provides as follows:

(continued. . .)

May 11, 2011, police were called to the mother's home after she was found dead with cuts and wounds to her head and neck.  A knife was found next to her body.  Hernane was located shortly thereafter in a nearby park with blood on his shirt and shorts.

Hernane was initially convicted by a jury of murder in the second degree and sentenced to a term of life imprisonment with the possibility of parole.  A judgment of conviction and sentence was entered on October 22, 2013.  Hernane appealed from the conviction and sentence to the ICA alleging prosecutorial

---

(. . . continued)

> (1)   Except as provided in section 707-701, a person commits the offense of murder in the second degree if the person intentionally or knowingly causes the death of another person.
>
> (2)   Murder in the second degree is a felony for which the defendant shall be sentenced to imprisonment as provided in section 706-656.

[6]   HRS § 706-656(2) provides as follows:

> Except as provided in section 706-657, pertaining to enhanced sentence for second degree murder, persons convicted of second degree murder and attempted second degree murder shall be sentenced to life imprisonment with possibility of parole.  The minimum length of imprisonment shall be determined by the Hawai['i] paroling authority; provided that persons who are repeat offenders under section 706-606.5 shall serve at least the applicable mandatory minimum term of imprisonment.
>
> If the court imposes a sentence of life imprisonment without possibility of parole pursuant to section 706-657, as part of that sentence, the court shall order the director of public safety and the Hawai['i] paroling authority to prepare an application for the governor to commute the sentence to life imprisonment with parole at the end of twenty years of imprisonment; provided that persons who are repeat offenders under section 706-606.5 shall serve at least the applicable mandatory minimum term of imprisonment.

misconduct.  On January 11, 2016, the ICA entered a judgment on appeal pursuant to its November 30, 2015 memorandum opinion, State v. Hernane, CAAP-13-0005212 (App. Nov. 30, 2015) (mem.), vacating the circuit court's October 22, 2013 judgment of conviction and remanding Hernane's case for a new trial.  The State filed an application for writ of certiorari to this court.

Meanwhile, on February 9, 2016, the circuit court held a hearing to set the retrial week.  Defense counsel explained that Hernane was not present because he was "in prison in Arizona."[7] The State, through a deputy prosecuting attorney, informed the circuit court that it had filed an application for writ of certiorari, and the circuit court stayed the proceedings.

On March 23, 2016, this court rejected certiorari.  This triggered the 180-day time period pursuant to HRPP Rule 48 for Hernane's trial to commence.  See HRPP Rule 48.[8]

## B.    Remanded Circuit Court Proceedings

On April 12, 2016, another status conference was held, at which the parties again discussed that Hernane was being held in Arizona.  On April 13, 2016, the deputy prosecuting attorney instructed paralegals at the Honolulu Prosecutor's Office to

---

[7]    The record does not reflect that Hernane was serving any other prison term.

[8]    See note 1, supra.

contact the Department of Public Safety to arrange for Hernane's return.

On May 3, 2016, the circuit court held another hearing to set Hernane's retrial. Hernane was not present; defense counsel stated that Hernane "had not been transported from prison by airplane." The State represented that it had made a request to the Department of Public Safety ("DPS") to have Hernane returned to Hawai'i, and had been informed that he would be returned in July of 2016, but that the exact date was not disclosed for security reasons.

The State asked the circuit court to take under advisement any ruling on Rule 48 and stated that March 23, 2016 was "conceptually the restart date for purposes of Rule 48." Defense counsel requested that trial not be set unless Hernane was present. Over defense counsel's objection, the circuit court set a trial date for August 1, 2016 and scheduled a trial call for July 19, 2016. The circuit court stated it would "take under advisement the determination of Rule 48 excludability, if any, until such time as the issue is raised."

On July 13, 2016, based on the State's request, the trial call was continued to July 22, 2016.

Hernane was returned to Hawai'i on July 19, 2016.  One hundred eighteen days had passed since certiorari had been rejected on March 23, 2016.

On July 22, 2016, Hernane's counsel made an oral motion to continue, and trial was continued to the week of October 31, 2016.  Thereafter, Hernane filed multiple continuances as well as motions regarding his fitness to proceed; he was not determined fit to proceed until December 7, 2017.  Hernane's retrial was then scheduled for February 5, 2018.

On February 5, 2018, the day of his scheduled jury trial, Hernane filed a motion to dismiss indictment for violation of HRPP Rule 48 ("Rule 48 Motion").  Hernane maintained that since March 23, 2016, a total of 684 days had passed, of which only the 503 days between July 22, 2016 and December 7, 2017 qualified as excludable time periods for the purposes of HRPP Rule 48(c)(1) and (c)(3); Hernane conceded as excludable his requested continuances as well as proceedings relating to his fitness to stand trial.[9]  Hernane alleged, however, that as of

---

[9]   HRPP Rule 48(c)(1) and (c)(3) exclude the following time periods from Rule 48's 180-day "commencement of trial" deadline:

> (1) periods that delay commencement of trial and are caused by collateral or other proceedings concerning the defendant, including but not limited to penal irresponsibility examinations and periods during which the defendant is incompetent to stand trial, pretrial motions, interlocutory appeals and trials of other charges;
> . . . .

(continued. . .)

February 5, 2018, 181 days had elapsed since the rejection of the application for writ of certiorari on March 23, 2016 that were not excludable pursuant to HRPP Rule 48, requiring dismissal due to a violation of HRPP Rule 48.

The State opposed the Rule 48 Motion and asserted that because Hernane was being held pre-trial in Arizona, Hernane "must be deemed unavailable from May 3, 2016 to July 22, 2016."

A hearing on the Rule 48 Motion was held that day, February 5, 2018.  The circuit court took judicial notice of the records and files in the case to calculate the time elapsed between the date certiorari was rejected and the date Hernane's trial commenced, which would be later that same day, February 5, 2018. The State entered four exhibits into evidence, which contained a series of emails between the deputy prosecuting attorney and paralegals at the Honolulu prosecutor's officer concerning Hernane's return to Hawai'i.

The State called one witness, a paralegal at the Honolulu prosecutor's office, to testify about the procedure used by the prosecutor's office to return a defendant housed in a mainland facility to Hawai'i for trial.  The paralegal explained,

_____

(. . . continued)
        (3) periods that delay the commencement of trial and are
        caused by a continuance granted at the request or with the
        consent of the defendant or defendant's counsel;
        . . . .

8

> [w]hen we're informed that the defendant is being housed in a mainland facility, we contact the Department of Public Safety. Our contact is Howard Komori ["Komori"]. He handles -- he's the administrator for inmates who are housed in a mainland facility.
>
> Q. [Deputy Prosecuting Attorney] And could you explain for us in greater detail what the request is that you submit to Mr. Komori?
>
> A. [Paralegal] It's -- we usually either call or email him with our request for a specific inmate to be brought back to the state, and we let him know that he needs to be brought back for trial[.]

The paralegal further stated that on April 13, 2016, she received an email from the deputy prosecuting attorney requesting that she contact DPS to have Hernane brought back to the state for trial. The paralegal further explained that thereafter she contacted Komori and was informed that Hernane would be brought back in July of 2016. The paralegal also testified that on April 26, 2016, she sent another email updating the deputy prosecuting attorney that Hernane was still scheduled to return to Hawai'i in July 2016. She testified that DPS decides when a defendant is brought back, and to her knowledge, the prosecutor's office does not have any say as to when someone is brought back.

The paralegal also testified that, on June 22, 2016, the deputy prosecuting attorney requested that she follow-up with Komori regarding Hernane's return, which the paralegal did, and she was informed that he would be brought back on July 19, 2016. She testified that, knowing that a trial call was scheduled for

July 19, 2016, she called the court to move the trial call to after the 19th and was given two dates, the 21st or 22nd of July. The paralegal contacted Hernane's counsel after obtaining the new July 22nd date. On cross-examination, she testified that it was her understanding that Hernane was being brought back on the first regularly scheduled available flight back to Hawai'i.

Hernane then argued that he was not "unavailable" for purposes of HRPP Rule 48 for the period during which he was "housed on the mainland" because he "was in Hawai'i State custody." Alternatively, Hernane argued that even if he was "unavailable," the State did not show it exercised due diligence to bring him back promptly.

The State argued that it had exercised due diligence in securing Hernane's presence for trial, and thus, Hernane's Rule 48 Motion should be denied pursuant to State v. Jackson, 8 Haw. App. 624, 817 P.2d 130 (1991). The State argued "it was only on April 12th, 2016, when I [the deputy prosecuting attorney] became aware" at an informal status conference that Hernane was being held in Arizona.[10] The State further maintained that the "Honolulu prosecutor's office does not tell [DPS] what to do and

_____

[10]    But see text accompanying note 7, supra.

when to do it" and their office had timely submitted the request and then had to "simply wait[] for [DPS's] response."

After the parties completed their arguments, the circuit court noted that the disputed time period was March 23, 2016 up through and including the July 22, 2016, a total of 121 days, during "the vast majority" of which Hernane was held in Arizona until he was returned on July 19, 2016 "or thereabouts." Hernane asserted a violation of HRPP Rule 48 based on the passage of 181 unexcludable days, a difference of only one day from the requirement that trial commence within 180 days.  The circuit court clarified that it would rule alternatively, and proceeded to offer various calculations of excludable time periods, all of which supported its conclusion that there was no violation of HRPP Rule 48.

In its first alternative, the circuit court ruled that the 118 days between the rejection of certiorari on March 23, 2016 until Hernane's return to Hawai'i on July 19, 2016, were excludable.  In its second alternative, the circuit court ruled that the ninety-eight days from April 12, 2016, when the deputy prosecuting attorney allegedly became aware that Hernane was not present in the State,[11] until Hernane's return on July 19, 2016,

---

[11]    Again, at the February 9, 2016 trial setting hearing with the deputy prosecuting attorney present, Hernane's counsel noted that Hernane was not (continued. . .)

were excludable. To reach this finding, the circuit court relied on Jackson, and found (1) that "the State, upon becoming informed of [Hernane's whereabouts], made good-faith diligent efforts going forward to secure the attendance of the defendant for the anticipated retrial," and (2) that the "July date" was not an "unreasonable delay" because it was "the first available scheduled return for mainland inmates." In its third alternative, the circuit court ruled that the 77 days from the May 3rd calendar call until Hernane's return on July 19th were excludable pursuant to HRPP Rule 48(c)(5) and (c)(8) and Jackson.

On February 27, 2018, the court entered its findings of fact, conclusions of law, and order denying Hernane's Rule 48 Motion consistent with its oral rulings.

Hernane's jury trial commenced on February 5, 2018 after the Rule 48 hearing, and it lasted six days. On February 15, 2018, the jury returned a verdict finding Hernane guilty of the lesser-included offense of manslaughter in violation of HRS § 707-702(1)(a).[12] On April 17, 2018, the circuit court entered a

---

(. . . continued)
present because he was being held in Arizona. See text accompanying note 7, supra.

[12] HRS § 707-702(1)(a) (Supp. 2011) provides in relevant part: "A person commits the offense of manslaughter if . . . [t]he person recklessly causes the death of another person . . . ."

judgment of conviction and sentence, sentencing Hernane, <u>inter alia</u>, to a twenty-year term of incarceration.

**C.   Appeal to the ICA**

Hernane timely appealed the circuit court's judgment of conviction and sentence to the ICA, basically repeating the arguments he made below and challenging the circuit court's denial of his Rule 48 Motion.  In its April 11, 2019 summary disposition order, the ICA affirmed the circuit court's judgment of conviction and sentence.  <u>State v. Hernane</u>, CAAP-18-0000350, at 6, 11 (App. April 11, 2019) (SDO).

With respect to the Rule 48 issue, relying on its holding in <u>Jackson</u>, the ICA noted that the HRPP does not define unavailability, but that the ICA had previously adopted the definition of unavailability from the Federal Speedy Trial Act, 18 U.S.C. § 3161(h)(3)(B) (1979): "a defendant . . . . shall be considered unavailable whenever his [or her] whereabouts are known but his [or her] presence for trial cannot be obtained by due diligence."  <u>Hernane</u>, SDO at 3 (citing <u>Jackson</u>, 8 Haw. App. at 630, 817 P.2d at 135).  The ICA also opined that "'[d]ue diligence is a fluid concept that must be determined on a case by case basis . . . .'"  <u>Hernane</u>, SDO at 3 (quoting <u>Jackson</u>, 8 Haw. App. at 630, 817 P.2d at 135).

The ICA stated that the main issue was whether the State used due diligence to procure Hernane's return to Honolulu for retrial. Hernane, SDO at 3-4. The ICA determined that based on the paralegal's testimony and the State's exhibits, the circuit court had not erred and had correctly concluded that Hernane's right to trial commencement under HRPP Rule 48 had not been violated. Hernane, SDO at 6.

**D. Application for Writ of Certiorari**

We address Hernane's first question on certiorari, whether the ICA gravely erred in denying his motion to dismiss the indictment pursuant to HRPP Rule 48. Hernane basically argues that the delay between March 23, 2016 and July 19, 2016, was not excludable because he was not "unavailable" for purposes of HRPP Rule 48.

**III. Standard of Review of HRPP Rule 48 Motion to Dismiss**

> The appellate court reviews a trial court's decision on a HRPP Rule 48 motion to dismiss under both the "clearly erroneous" and "right/wrong" tests:
>
> > A trial court's findings of fact (FOFs) in deciding an HRPP 48(b) motion to dismiss are subject to the clearly erroneous standard of review. An FOF is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction that a mistake has been committed. However, whether those facts fall within HRPP 48(b)'s exclusionary provisions is a question of law, the determination of which is freely reviewable pursuant to the "right/wrong" test.

14

> [State v. ]Samonte, 83 Hawai'i [507, 514], 928 P.2d [1, 8 (1996)] (quoting State v. Hutch, 75 Haw. 307, 328-29, 861 P.2d 11, 22 (1993)).

Choy Foo, 142 Hawai'i at 72, 414 P.3d at 124.

## IV.  The time Hernane spent in Arizona in Hawai'i State custody was not excludable under HRPP Rule 48(c)(5)

Hernane asserts the ICA erred in affirming the circuit court's denial of his Rule 48 motion by holding that Hernane was "unavailable" for purposes of HRPP Rule 48(c)(5) while he was in Hawai'i State custody in an Arizona prison facility.

"The purpose of Rule 48 is to ensure an accused a speedy trial, which is separate and distinct from his constitutional protection to a speedy trial." Estencion, 63 Haw. at 268, 625 P.2d at 1043. Speedy trial rules are intended to prevent unreasonable delay in the determination of criminal actions that "subvert[] the public good and disgrace[] the administration of justice[.]" 63 Haw. at 268, 625 P.2d at 1043 (citing People v. Solomon, 70 N.E.2d 404 (1946)). To accomplish this end, HRPP Rule 48(b) requires a court to dismiss the charge upon the defendant's motion "'if trial is not commenced within 6 months' of a relevant triggering date." Choy Foo, 142 Hawai'i at 72, 414 P.3d at 124. The six-month period under HRPP Rule 48 is equivalent to 180 days. See State v. Hoey, 77 Hawai'i 17, 28, 881 P.2d 504, 515 (1994). Under HRPP Rule 48(c), there are "eight categories of delay that are to be excluded from

calculating the time within which trial must commence."  Choy Foo, 142 Hawai'i at 72-73, 414 P.3d at 124-25.

At issue in this case is one of those categories, which excludes "periods that delay the commencement of trial and are caused by the absence or unavailability of the defendant."  HRPP Rule 48(c)(5) (emphasis added).  What constitutes a "period[] that delay[s] the commencement of trial and [is] caused by the [] unavailability of the defendant" is not further defined within the HRPP.

Based on the authority below, we hold that a defendant is not "unavailable" for purposes of HRPP Rule 48 when he is in Hawai'i State custody and does not prevent his own transportation to court.  Cf. Mainwaring v. State, 11 So. 3d 986, 991 (Fla. Dist. Ct. App. 2009) ("The bare refusal of one county to transport an accused person to another county where the speedy trial time is running is ordinarily not sufficient to establish that the accused is 'unavailable' for trial.").

In State v. Willoughby, 83 Hawai'i 496, 927 P.2d 1379 (App. 1996), the ICA affirmed a trial court ruling that the 1,089 days between an indictment and when the defendant was served with a warrant for his arrest on the mainland was excludable under HRPP Rule 48(c)(5) because the period had been caused by the unavailability of the defendant.  83 Hawai'i at 501, 927 P.2d at

16

1384. During the 1,089 days, despite "periodically searching existing computer data bases," the Honolulu Police Department ("HPD") had been unable to find the defendant, who had left Hawaiʻi without leaving a forwarding address. 83 Hawaiʻi at 498, 927 P.2d at 1381. HPD only learned the defendant's whereabouts when they were contacted by the New Jersey prosecutor's office regarding the outstanding warrant for the defendant's arrest. Id.

In Jackson, which the circuit court and the ICA relied upon in this case, although the defendant was imprisoned in Honolulu, the defendant was in federal custody. See 8 Haw. App. at 628-29, 817 P.2d at 135. The ICA adopted the following definition of "unavailability" from the Federal Speedy Trial Act, 18 U.S.C. § 3161(h)(3)(B): "a defendant . . . shall be considered unavailable whenever [the defendant's] whereabouts are known but [the defendant's] presence for trial cannot be obtained by due diligence[.]" 8 Haw. App. at 630, 817 P.2d at 134.[13] The ICA held that the State had exercised due diligence to secure the defendant's presence for his arraignment because the prosecuting attorney had contacted the United States Marshal's office in an attempt to have the defendant brought to the circuit court, but

---

[13] As explained below, Jackson is inapplicable because Hernane was not "unavailable." As the issue is not before us, we do not decide whether "due diligence" would satisfy the State's burden in a case where a defendant is actually "unavailable."

17

the Marshal refused to deliver the defendant. 8 Haw. App. at 632, 817 P.2d at 135. The ICA held, "[t]he 231 days between November 17, 1988, when the State first attempted to get the Marshal to produce Defendant, and July 6, 1989, when Defendant failed to appear for his eighth scheduled arraignment, was properly excluded pursuant to Rule 48(c)(5), HRPP." 8 Haw. App. at 633, 817 P.2d at 136. The ICA posited that to determine whether due diligence was exercised, a court's "focus is on what was done by the state rather than on what was not done." 8 Haw. App. at 632, 817 P.2d at 136-37 (citing Ingram v. State, 703 P.2d 415, 431 (Alaska Ct. App. 1985) ("[P]rimary emphasis must be on the reasonableness of the efforts actually made, not on the alternative that might have been made available.")).

Relying on Jackson, the State and circuit court ruled that the State had "exercised due diligence and made good faith efforts to return Defendant to Hawai'i for retrial[,]" and that, therefore, the time Hernane remained in Arizona was excludable under HRPP Rule 48(c)(5).

Through various cases similar to Willoughby and Jackson, other state courts have addressed whether a defendant who becomes absent due to relocation to another state or incarceration by another state or federal government is "unavailable" during the time period it takes to obtain the

18

presence the defendant.  For example, the Supreme Court of Pennsylvania has held that where a defendant incarcerated in an out-of-state jail initially refused extradition, he was "unavailable" until he was returned to that state.  Commonwealth v. Stange, 428 A.2d 226 (Pa. 1981); see also People v. Garner, 74 Cal.Rptr. 298, 304 (Cal. Ct. App. 1990) (holding a defendant who resisted extradition was unavailable).  That court also ruled that a defendant who had "voluntarily absented" himself from that state was "unavailable" until after he was returned to the state after arrest in an extradition waiver.  Commonwealth v. Polsky, 426 A.2d 610 (Pa. 1981); see also State v. Hattori, 573 P.2d 829 (Ct. App. Wash. 1978) (holding that a defendant was unavailable until his arrest in California and return to Washington).  But here, Jackson is inapplicable because Hernane was not held by another jurisdiction, but was in Hawai'i State custody.  Accordingly, no due diligence inquiry is necessary because the State had the sole responsibility for transporting the defendant.

There do not appear to be any reported cases regarding whether or not a defendant held in state custody in that state's prison located in another state can be deemed "unavailable" in the custodial state.  Florida courts have held, however, that for purposes of Florida's speedy trial rule, "if the charging

19

county has knowledge that the defendant is incarcerated in another county, the defendant is not considered 'unavailable' for trial in the charging county." Mainwaring, 11 So. 3d at 989; see also State v. Steele, 624 N.W.2d 1, 8 (Neb. 2001) ("The primary burden of bringing an accused person to trial within the time provided by law is upon the State."). The Colorado Court of Appeals held that defendants were not unavailable for purposes of that state's Speedy Trial Act for the time they were in California based on a post-arraignment extradition or a waiver of extradition. People v. Wimer, 604 P.2d 1183 (Colo. App. 1979). In addition, the Supreme Court of Illinois held that where the state had voluntarily relinquished control over a defendant to federal authorities, the delay was attributable to the state. People v. Swartz, 171 N.E.2d 784 (Ill. 1961).

The absence of reported cases similar to Hernane's situation is logical. As indicated by the cases above, it is when a defendant has "voluntarily absented" himself from a state or when a state does not know about or have control over the custody of a defendant in another state that a time period is excludable for speedy trial purposes for being "caused by the unavailability of the defendant." As pointed out in the American Bar Association Standards for Criminal Justice Relating to Speedy Trial: "[a] defendant should be considered unavailable

whenever his whereabouts are known but his presence for trial cannot be obtained or he resists being returned to the state for trial." AMERICAN BAR ASSOCIATION STANDARDS FOR CRIMINAL JUSTICE RELATING TO SPEEDY TRIAL, Standard 12-2.3(e) (Supp. 1986) (quoted in Jackson, 8 Haw. App. at 630, 817 P.2d at 134); see also People v. Moye, 635 P.2d 194, 196 (Colo. 1981) (citing ABA Standard 12-2.3(e)).

Under the ABA Standard, Hernane clearly was not "unavailable." His whereabouts were known, but the requirement that "his presence for trial cannot be obtained" was simply non-existent. Hernane was in custody of the State of Hawai'i Department of Public Safety. The State knew where he was and had control over his location;[14] Hernane did not "voluntarily absent" himself to Arizona. In addition, he did not "resist being returned to the state for trial." It was the State that failed to return him for 118 days although his conviction had been vacated; he was therefore a pre-trial detainee being held in a prison, not a jail. As a pre-trial detainee, he should have promptly been returned to Hawai'i.

---

[14] We reject the circuit court's finding that "[t]he Honolulu Prosecutor's Office exercises no control over [the Department of Public Safety]. Our county prosecutors have been delegated the primary authority and responsibility for initiating and conducting criminal prosecutions within their respective counties, but do so under the authority of the attorney general of the State of Hawai'i. Ruggles v. Yagong, 135 Hawai'i 411, 418, 353 P.3d 953, 960 (2015). As agents of the State of Hawaï'i, county prosecutors are obligated to fulfill the responsibilities of the State of Hawai'i in their prosecutions. Whether the Honolulu Prosecutor's Office exercises "control" over the Department of Public Safety is irrelevant -- Hernane was in Hawai'i State custody and therefore was not unavailable.

21

In addition, the circuit court and ICA in this case relied on Jackson as legal authority allowing exclusion of the time Hernane was held in Arizona from the Rule 48 calculation. In Jackson, after citing the ABA Standard quoted above, the ICA adopted the Federal Speedy Trial Act's definition of "unavailability" that "a defendant . . . shall be considered unavailable whenever [the defendant's] whereabouts are known but [the defendant's] presence for trial cannot be obtained by due diligence." 8 Haw. App. at 630, 817 P.2d at 134-35.

Yet, the Federal Speedy Trial Act itself would not have authorized the circuit court to exclude the bulk of the time period Hernane was held in Arizona. 18 U.S.C. § 3161(h)(1)(F) expressly limits the excludable time resulting from transportation of defendants already within federal custody to ten days:

> [D]elay resulting from transportation of any defendant from another district, or to and from places of examination or hospitalization [are excluded], except that any time consumed in excess of ten days from the date an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable[.]

HRPP Rule 48, on the other hand, does not contain this up-to-ten-day leeway period for transporting defendants in the custody of the State of Hawai'i. Thus, the legal authority on which the circuit court and ICA relied would not have allowed exclusion of

the time periods they deemed excludable under HRPP Rule 48(c)(5).[15]

## V. Conclusion

For all of these reasons, the time Hernane spent in Arizona in State custody was not excludable under HRPP Rule 48(c)(5). The circuit court therefore erred in denying Hernane's Rule 48 Motion. The Rule 48 violation requires dismissal of the charge against Hernane. We therefore vacate the ICA's January 11, 2016 judgment on appeal and the circuit court's October 22, 2013 judgment of conviction and sentence and remand this case to the

---

[15] Even for defendants held in the custody of another jurisdiction, the Federal Speedy Trial Act contains additional language contradicting the circuit court and ICA's exclusion of the time Hernane continued to be held in Arizona. 18 U.S.C. § 3161(j)(1)(A) contains language clarifying the expected action of a government attorney to secure a defendant's presence for trial: "If the attorney for the Government knows that a person charged with an offense is serving a term of imprisonment in any penal institution, he shall promptly . . . undertake to obtain the presence of the prisoner for trial[.]" 18 U.S.C. § 3161(j)(1)(A) (emphasis added). The legislative history of the act provides that "[w]ith respect to the term 'promptly' as used in this subsection, the Committee intends that the attorney for the Government . . . shall initiate detainer or demand certificate procedures as soon after he becomes aware of the fact that the accused is imprisoned as is practicable." H.R. Rep. No. 93-1508, at 22-23 (1974). Based on the record, the State did not act promptly to seek Hernane's return as the record reflects that the State knew Hernane was imprisoned in Arizona in February 2016, but did not make a request for Hernane's return until April. In addition, the State could have and should have flown Hernane back to Hawai'i promptly when his conviction was vacated, as he was then a pre-trial detainee, not a convicted felon.

circuit court for further proceedings consistent with this
opinion.

Jon K. Ikenaga                    /s/ Mark E. Recktenwald
for petitioner
                                  /s/ Paula A. Nakayama
Stephen K. Tsushima
for respondent                    /s/ Sabrina S. McKenna

                                  /s/ Michael D. Wilson

                                  /s/ Bert I. Ayabe

