**Electronically Filed
Intermediate Court of Appeals
CAAP-24-0000713
09-DEC-2025
07:49 AM
Dkt. 99 SO**

NO. CAAP-24-0000713

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
HOKUOKALANI PATOC, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1CPC-23-0000238)

### SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, McCullen and Guidry, JJ.)

Defendant-Appellant Hokuokalani Patoc (**Patoc**) appeals from the Circuit Court of the First Circuit's (**circuit court**) "Judgment of Conviction and Sentence" (**Judgment**) filed on September 27, 2024.[1]

On February 22, 2023, the State of Hawai'i (**State**) filed a three-count indictment (**Indictment**) against Patoc.[2] A

---

[1]   The Honorable Paul B.K. Wong presided.

[2]   The Indictment charged Patoc with: (1) attempted murder in the first degree, in violation of Hawaii Revised Statutes (**HRS**) §§ 705-500 (2014) and 707-701(1)(b) (2014); (2) unauthorized control of propelled vehicle in the first degree, in violation of HRS § 708-836 (2014); and (3) resisting an

(continued . . .)

jury found Patoc guilty of the included offense of assault in the first degree in violation of HRS § 707-710 (2014), and guilty as charged of unauthorized control of a propelled vehicle in the first degree and resisting an order to stop a motor vehicle in the second degree.  The circuit court sentenced Patoc to consecutive ten-year and five-year indeterminate terms of imprisonment, and to a one-year term of imprisonment to be served concurrently with Patoc's other sentences.

On appeal, Patoc raises two points of error, contending that the circuit court erred when it: (1) "denied Patoc's Motion to Dismiss for Violation of Hawai['] i Rules of Penal Procedure [(**HRPP**)] Rule 48 and Speedy Trial [(**Motion to Dismiss**)]"; and (2) "sentenced Patoc without a [p]re-sentence diagnosis and report as required by [HRS §] 706-601 [(2014)]."

Upon careful review of the record, briefs, and relevant legal authorities, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Patoc's points of error as follows:

(1) Patoc contends the circuit court erred in denying his Motion to Dismiss because, as of the filing of the Motion to Dismiss on December 21, 2023, "more than 180 days had elapsed

---

[2](. . . continued)
order to stop a motor vehicle in the second degree, in violation of HRS § 710-1027 (2014).

2

since Patoc's arrest."[3]  Patoc specifically challenges the circuit court's exclusion of the period between July 24, 2023, and December 25, 2023 from the HRPP Rule 48 calculation.

We review the circuit court's decision on an HRPP Rule 48 motion to dismiss under both the clearly erroneous and right/wrong standards.  State v. Hernane, 145 Hawaiʻi 444, 449, 454 P.3d 385, 390 (2019).

> A [circuit] court's findings of fact (FOFs) in deciding an HRPP [Rule] 48(b) motion to dismiss are subject to the clearly erroneous standard of review.  An FOF is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction that a mistake has been committed.  However, whether those facts fall within HRPP [Rule] 48(b)'s exclusionary provisions is a question of law, the

---

[3]     Patoc also challenges the following conclusions of law:

14.    The issue here is the 155 day time period between July 24, 2023, and December 25, 2023, for the court's suspension of this [proceeding] to determine [Patoc's] fitness to proceed.

15.    The court finds it to be poor judicial management of resources to have [Patoc] proceed to trial in one case while pending fitness determination in another case.  If that were to be the case [Patoc] can effectively undermine the trial for which he is ready and going to trial by later claiming that he was unfit to proceed, allowing him two bites of the apple.

16.    To preclude the mismanagement and poor judicial efficiency the court finds that the 155 day time period July 25, 2023, to December 25, 2023 is excluded for Rule 48 and speedy trial purposes pursuant to HRPP Rule 48(c)(8), that there is in fact good cause for the suspension of proceedings.

17.    The court finds that 324 days have elapsed from [Patoc's] arrest and bail set to current trial setting of January 8, 2024, and that of the 324 days the previous findings and conclusions allow the exclusion[] of 226 days.

18.    The court finds no violation of HRPP Rule 48.

determination of which is freely reviewable pursuant to the
right/wrong test.

Id. (cleaned up).

HRPP Rule 48(b)(1) provides, in relevant part, that
"the court shall, on motion of the defendant, dismiss the charge
. . . if trial is not commenced within [six] months . . . from
the date of arrest if bail is set."  The parties agree that
February 16, 2023, the date of Patoc's arrest, is the start date
for HRPP Rule 48 purposes.

In calculating the time within which trial must
commence, HRPP Rule 48(c) expressly excludes, inter alia, the
following periods:

> **(c) Excluded periods.** The following periods shall be
> excluded in computing the time for trial commencement:
>
> (1) periods that delay the commencement of trial and
> are caused by collateral or other proceedings concerning
> the defendant, including but not limited to penal
> irresponsibility examinations and periods during which the
> defendant is incompetent to stand trial, pretrial motions,
> interlocutory appeals and trials of other charges[.]

(Emphasis added.)

The record reflects that the circuit court suspended
the proceedings, from July 24, 2023 through December 25, 2023,
during the time that Patoc was complying with its order for
Patoc to undergo a HRS § 704-404 mental health examination.
Patoc contends the circuit court erred by excluding this period
from the HRPP Rule 48 calculation because "[n]either the State
[n]or Patoc requested a mental health examination . . . [, and

t]here was no incident referenced by the State or Patoc in this case which necessitated [the court's sua sponte order]."

HRS § 704-404 (2014) provides that "[w]henever . . . there is reason to doubt the defendant's fitness to proceed, . . . the court may immediately suspend all further proceedings in the prosecution" and order the defendant to undergo an examination.  "The court's reason may come from [its] own observations, known facts, evidence presented, motions, affidavits, or any other reasonable or credible sources."  State v. Harter, 134 Hawaiʻi 308, 331, 340 P.3d 440, 463 (2014) (cleaned up).

In its motion to set a firm trial date and for determination of HRPP Rule 48, the State informed the circuit court that Patoc had been ordered, in June 2023, to undergo an HRS § 704-404 fitness examination in case no. 1CPC-23-0000576.[4] The circuit court took judicial notice of the records and proceedings in case no. 1CPC-23-0000576, and sua sponte ordered a fitness and penal responsibility determination for Patoc.

In light of the above-described proceedings in 1CPC-23-0000576 the circuit court appropriately exercised its

---

[4]      Patoc was charged in case no. 1CPC-23-0000576 with an unrelated criminal offense.  Pursuant to Hawaii Rules of Evidence Rule 201, this court takes judicial notice of the records and proceedings in circuit court case no. 1CPC-23-0000576.  Patoc's defense counsel in 1CPC-23-0000576 moved for an HRS § 704-404 examination on June 26, 2023, and the court in 1CPC-23-0000576 granted the motion on June 27, 2023.

discretion to sua sponte suspend the underlying proceedings, from July 24, 2023 to December 25, 2023, for the purpose of determining Patoc's fitness to proceed. See id. at 330, 340 P.3d at 462 ("[W]hen a trial court finds that there is . . . reason to believe that the defendant's mental or physical state will become an issue in the case, the court is required to suspend the proceedings and order an examination.") (emphasis added) (cleaned up). We conclude that the circuit court did not err in excluding this period from the HRPP Rule 48 calculation. See HRPP Rule 48(c)(1) (authorizing the exclusion of "periods that delay the commencement of trial and are caused by collateral or other proceedings concerning the defendant, including but not limited to penal irresponsibility examinations and periods during which the defendant is incompetent to stand trial" when computing the time for trial commencement). The circuit court therefore did not err in denying Patoc's Motion to Dismiss.

(2) Patoc contends the circuit court erred when it sentenced Patoc without preparing a pre-sentence report and when the circuit court did not conduct a colloquy with Patoc to determine whether Patoc "intentionally, knowingly[,] and voluntarily waived his right to the preparation of a pre-sentence report." We review sentencing decisions for abuse of discretion. State v. Hussein, 122 Hawaiʻi 495, 503, 229 P.3d

313, 321 (2010).  "[T]o constitute an abuse it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant."  Id. (citation omitted).

HRS § 706-601(1) (2014) states that "the court shall order a pre-sentence correctional diagnosis of the defendant . . . where: . . . [t]he defendant has been convicted of a felony."  (Emphasis added.)  Patoc was convicted of two felony offenses: assault in the first degree and unauthorized control of a propelled vehicle in the first degree.  See HRS §§ 707-710(2) (2014), 708-836(5) (2014).[5]

HRS § 706-601(3) (Supp. 2016) states, however, that the pre-sentence report requirement can be waived if certain circumstances are met.

> **With the consent of the court, the requirement of a pre-sentence diagnosis may be waived by agreement of both the defendant and the prosecuting attorney**; provided that in felony cases, the prosecuting attorney shall inform, or make reasonable efforts to inform, the victim or the victim's surviving immediate family members of their rights to be present at the sentencing hearing and to provide information relating to the impact of the crime, including any requested restitution.

(Emphasis added.)

"A waiver is the knowing, intelligent, and voluntary relinquishment of a known right."  State v. Friedman, 93 Hawai'i

---

[5]     Resisting an order to stop a motor vehicle in the second degree is a misdemeanor.  HRS § 710-1027(2) (2014).

63, 68, 996 P.2d 268, 273 (2000) (citation omitted).  We look at "the totality of [the] facts and circumstances" of this case to determine whether Patoc waived his right to a pre-sentence report.  Id. (citations omitted).

The record reflects that the circuit court ordered the preparation of a pre-sentence report.  The court-ordered report could not be completed, however, because Patoc refused, multiple times, to be interviewed by the probation officer.[6]  At the May 3, 2024 sentencing hearing, the circuit court explained the purpose of a pre-sentence report to Patoc, and Patoc stated several times that he did not want a pre-sentence report prepared.  The circuit court granted defense counsel's request for a continuance of the sentencing hearing over the State's objection.

At the June 21, 2024 continued sentencing hearing, defense counsel informed the circuit court that Patoc had "questions as to how the [pre-sentence] report was not done," and "that [Patoc] recognize[d] that he has a right to do it." The circuit court engaged in the following colloquy with Patoc:

> THE COURT:  Do you understand what this pre-sentence report i[s]?
>
> [PATOC]:    It is [sic] basically brings up my history and stuff like that about me, right?

---

[6]     In an April 2, 2024 letter to the circuit court, the probation officer stated that Patoc "failed to avail himself for presentence investigation."  The probation officer made three attempts to meet with Patoc to complete the interview, but Patoc declined each time.

THE COURT:  It does.

[PATOC]:    Right.

THE COURT:  And it's not just your history, right? It is a fairly comprehensive report.  It talks about your family background, your parents, whether or not you yourself have any children, your significant relationships. It also talks about your work history.  It is fairly detailed about that.  It talks about any criminal history that you might have.  And if there is any juvenile records. And I don't know if there is or not.  But if there is any juvenile records, they try to find that as well.

Then they will inquire about your physical condition, whether or not you have any physical disabilities or injuries of significance, like surgeries.  And they even look into whether or not there is any mental health issues and mental health treatment.  So is [sic] a fairly comprehensive report.  And it also allows for people to write in on your behalf.  They are called letters of reference or letters of support.  They normally get sent into the probation office.  And all of that is put together in the report.

There was a 704 examination that was sought in your case, right?

[PATOC]:    Correct.

THE COURT:  At one point.  If any of those reports by those examiners were completed, that would also get attached to the report as well.  So pretty -- like I said -- pretty extensive report.  You follow me so far?

[PATOC]:    Yeah.

THE COURT:  I normally recommend defendants to participate and have that report done.  Because, number 1, if they are sentenced to probation it assists the probation officer in supervision.  If a defendant is sentenced to prison, then the parole board really wants to see that report to determine what kind of minimum is going to be set for that particular person.  And it generally helps a defendant in both of those circumstances.  Follow me so far?

[PATOC]:    Yes.

THE COURT:  Do you have any questions about that so far?

[PATOC]:    So far, no.

THE COURT:  Okay.  And the Court, as [defense counsel] indicated, needs to order it unless you really say you don't want it and [the prosecutor] says he doesn't

> really want it as well. If both sides waive the report, then we can proceed to sentencing without. But if one side wants it and one side doesn't, I still got to order it. Do you have any questions about that?
>
> [PATOC]: No.

The circuit court then asked Patoc whether he wanted the pre-sentence report done. Patoc stated, "I was hoping that [the pre-sentence report] was already done to be honest with you." Patoc expressed reluctance to continue the sentencing hearing to allow time for preparation of a pre-sentence report, given that, "to postpone again, for something [he] feel[s] should have already been done . . . [was] not sitting well with [him]." When informed that the continued hearing would be on September 27, 2024, Patoc said, "I would definitely want that report, but at the same time, I just want to move on already with this whole process." Given Patoc's apparent uncertainty as to whether the pre-sentence report was worth a continuance, the circuit court continued sentencing so that Patoc could discuss the matter with his defense counsel.

At the September 27, 2024 continued sentencing hearing, the circuit court noted on the record Patoc's continued refusal to participate in the pre-sentencing report process, and engaged in the following colloquy with Patoc:

> THE COURT: Well, here is your choice. And we are back to square 1 again, Mr. Patoc.
>
> [PATOC]: Right.
>
> THE COURT: If you want to participate in the investigation with the probation officer to create a

10

> complete pre-sentence report, I will give you the time to do so. You have indicated that you didn't want to do that in the past.
>
> [PATOC]: Right.
>
> THE COURT: And if you don't, I will respect those wishes as well, and we can proceed to sentencing today.
>
> [PATOC]: Yeah, I definitely would like to proceed today.
>
> THE COURT: Today?
>
> [PATOC]: Yeah.
>
> THE COURT: So, again, you understand that whatever records we have now, if you were sentenced to prison, that is what the [Paroling] Authority is going to have. They don't have the benefit of the pre-sentence report. Normally they want to see that. We talked about this before, right?
>
> [PATOC]: Right. Right.
>
> THE COURT: So I want to make sure that if we proceed with sentencing you understand there is no [pre-sentence report] for the [Paroling] Authority. They normally rely on the [pre-sentence report] whenever they submit and make recommendations for minimum terms.
>
> And, again -- and I don't know for sure, your lawyer can confirm this. But it is my general belief that when detainees go before the [Paroling] Authority, it is more beneficial for them to have a [pre-sentence report] than not.

When asked if he wanted to proceed with sentencing, Patoc stated, "I definitely would like to continue to proceed in the sentencing." Patoc twice more represented during the circuit court's colloquy that he would like to proceed with sentencing.

We conclude, on this record, that the circuit court did not err in determining that the parties had waived the required pre-sentence report pursuant to HRS § 706-601(3).

11

Patoc intelligently, knowingly, and voluntarily waived his right to a pre-sentence report.  The prosecutor also represented on the record of the June 21, 2024 continued sentencing hearing that the "State is ready to proceed," and "the State believes that the [c]ourt and counsel have all that they need with respect to documents."  The circuit court therefore did not abuse its discretion in imposing a sentence without a pre-sentence report.

For the foregoing reasons, we affirm the Judgment.

DATED: Honolulu, Hawaiʻi, December 9, 2025.

On the briefs:

Keith S. Shigetomi,
for Defendant-Appellant.

Stephen K. Tsushima,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Sonja M.P. McCullen
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge